64 P.3d 296

**STATE of Idaho, Plaintiff–Respondent,**

v.

**Steven Paul YOUNG, Defendant–Appellant.**

No. 27705.

Supreme Court of Idaho,
Boise, February 2002 Term.

Nov. 26, 2002.

Rehearing Denied March 3, 2003.

Molly J. Huskey, Interim State Appellate Public Defender, Boise, for appellant. Sara B. Thomas argued.

Hon. Alan G. Lance, Attorney General; Kenneth K. Jorgensen, Deputy Attorney General, Boise, for respondent. Kenneth K. Jorgensen argued.

## ON REVIEW

SCHROEDER, Justice.

This is an appeal by Steven Paul Young (Young) from his conviction for felony injury to a child based upon his failure to seek professional medical care for burns sustained by his son. Young argues that the district court erred by improperly instructing the jury and by admitting unfairly prejudicial evidence, that he received ineffective assistance of counsel, and that his sentence was excessive. The Court of Appeals reversed Young's conviction, finding that the district court's instructions erroneously indicated that the jury only needed to find that Young willfully failed to obtain professional medical treatment for his child, when the statute under which Young was charged requires a finding that he did so with a purpose or willingness to cause his child to suffer. The State petitioned for review.

## I.

### FACTS AND PROCEDURAL BACKGROUND

Young's son, Michael Young (Michael), was born blind, cannot speak, and is developmentally delayed; however, he does have the ability to communicate needs, emotions, and pain. Young and Michael's mother eventually separated, and Michael came to live with Young. Subsequently, Young remarried.

On July 2, 1998, Young placed Michael in bathwater, when, according to Young, he was momentarily distracted by friends who were leaving the house. Although Young testified that Michael did not indicate any discomfort, apparently the water was too hot, and the next morning Michael's feet and buttocks were swollen and blistered. Young treated Michael's burns at home with antibiotic burn packs and aloe vera. Young continued to treat the burns until the early morning of July 6, when, at Young's request, Young's sister took Michael to her house in order to care for him. Later in the day of July 6, Young's sister determined that Michael's burns required professional medical attention and, although Young had not instructed her to do so, she transported Michael to St. Luke's Hospital in Boise. Later that day, Michael was transferred to a burn center in Salt Lake City. The treating physician diagnosed Michael's injuries as "typical immersion burn[s]," and Michael eventually received skin grafts to repair the damage. The physician testified that Michael also developed a urinary tract infection, most likely due to the delay in treating the burns.

Young was charged with felony injury to a child, based upon his act of placing Michael in the bathtub or, alternatively, his "failure to take the child for medical treatment after the child was burned." A jury found Young guilty of felony injury to a child based solely upon his failure to "provide reasonably necessary medical treatment after the child was burned." The district court imposed a sentence of six years, with eighteen months fixed. Young appealed, posing several arguments: 1) the district court erred by improperly instructing the jury regarding the offense of felony injury to a child, 2) the dis-

trict court erred by failing to instruct the jury regarding the lesser included offense of misdemeanor injury to a child, 3) he received ineffective assistance of counsel, 4) the district court erred in admitting photographs of Michael's injuries into evidence, 5) the district court erred when it denied his motion for a new trial, and 6) the district court abused its discretion in imposing Young's sentence.

The Court of Appeals reversed Young's conviction, remanding the case for a new trial, because it found that the district court's instructions erroneously instructed the jury that in order to find Young guilty, the jury only had to find that he purposefully or willingly caused delay in obtaining medical treatment for Michael, regardless of whether he intended for Michael to suffer or be injured. The Court held that, under the statutes dealing with felony injury to a child, the prosecution was required to show that Young kept Michael at home after he was burned with at least the knowledge that his actions would bring about further injuries or suffering. The State of Idaho petitioned for review.

## II.

## STANDARD OF REVIEW

When considering a case on review from the Court of Appeals, this Court does not merely review the correctness of the decision of the Court of Appeals. *Leavitt v. Swain,* 133 Idaho 624, 627, 991 P.2d 349, 352 (1999). Rather, this Court acts as though it is hearing the matter on direct appeal from the decision of the trial court; however, this Court does give serious consideration to the decision of the Court of Appeals. *Id.*

 The standard of review for factual issues relating to a jury conviction is whether there is substantial evidence upon which any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt, and the evidence is reviewed in the light most favorable to the State. *State v. Daniels,* 134 Idaho 896, 898, 11 P.3d 1114, 1116 (2000). When the issue is one of law, this Court has free review. *Bout-*

*en Constr. Co. v. H.F. Magnuson Co.,* 133 Idaho 756, 760, 992 P.2d 751, 755 (1999).

## III.

## THE DISTRICT COURT'S INSTRUCTIONS MISSTATED THE LAW AND WERE APT TO CONFUSE OR MISLEAD THE JURY

 The propriety of jury instructions is a question of law over which this Court exercises free review. *State v. Row,* 131 Idaho 303, 310, 955 P.2d 1082, 1089 (1998). This Court has upheld jury instructions that do not strictly comply with those contained in the Idaho Criminal Jury Instructions (ICJI), but this Court has cautioned: "[w]e emphasize, however, that any court which varies from jury instructions previously approved by this Court does so at considerable risk that the verdict rendered will be overturned on appeal." *State v. Merwin,* 131 Idaho 642, 647, 962 P.2d 1026, 1031 (1998). When reviewing jury instructions, this Court must first ask whether the instructions as a whole, and not individually, fairly and accurately reflect the applicable law. *Row,* 131 Idaho at 310, 955 P.2d at 1089. To be reversible error, instructions must have misled the jury or prejudiced the complaining party. *Id.*

 Young argues that the district court's jury instructions misstated the law and were apt to confuse and mislead the jury in two ways. First, he argues, the instructions misstated the law regarding a parent's legal duty to secure medical treatment for his or her children. Second, he argues, the instructions misstated the mental state the prosecution was required to show in order to secure a conviction.

Idaho Code section 18–1501(1) provides the following:

> Any person who, under circumstances or conditions likely to produce great bodily harm or death, willfully causes or permits any child to suffer, or inflicts thereon unjustifiable physical pain or mental suffering, or having the care or custody of any child, willfully causes or permits the person or health of such child to be injured, or willfully causes or permits such child to be placed in such situation that its person or

health is endangered, is punishable by imprisonment in the county jail not exceeding one (1) year, or in the state prison for not less than one (1) year nor more than ten (10) years.

A plain reading of section 18–1501(1) indicates that its purpose is to punish conduct or inaction that intentionally causes a child to suffer. In this case application of the statute would require that the State prove that Young failed to take the child for medical treatment after the child was burned and that this failure was done with the knowledge that it would cause the child to suffer or would inflict unjustifiable physical pain or mental suffering. The purpose of the statute is not to punish mistakes in judgment that are reviewed in hindsight. If Young knew that failure to take the child for medical care would cause unnecessary suffering or unjustifiable physical pain, then he would be guilty. The question is not limited to the issue of whether he failed to obtain reasonable medical attention. Once established that the child should have received reasonable medical attention, there must be a further showing that the failure to obtain that medical attention was done with knowledge that this would cause unnecessary suffering or unjustifiable physical pain. Otherwise custodians of children may be subjected to criminal penalties for good faith decisions that turn out poorly—innocent mistakes in judgment.

Read by itself section 18–1501(1) leads a jury to the proper analysis. In this case, however, the jury was given Instruction 13 based upon Idaho Code section 18–101(1). Instruction 13 provides the following:

The word "willfully," when applied to the intent with which an act is done or omitted, implies simply a purpose or willingness to commit the act or make the omission referred. to. It does not require any intent to violate the law, or to injure another, or to acquire any advantage.

Idaho Code section 18–101(1) provides the following:

The following words have in this code the signification attached to them in this section, unless otherwise apparent from the context:

1. The word "wilfully," when applied to the intent with which an act is done or omitted, implies simply a purpose or willingness to commit the act or make the omission referred to. It does not require any intent to violate law, or to injure another, or to acquire any advantage.

■ Generally giving an instruction in statutory language is not error. However, section 101 has its own built in warning that it is not appropriate in all instances in which the word willfully is used in the charging statute. Section 101 expressly provides that the term willfully is to be applied as defined "unless otherwise apparent from the context." It is apparent from the context of section 18–1501(1) that the generalized definition of willfully should not be used. Section 18–1501(1) tells the jury that the State must prove that Young willfully caused or permitted the child to suffer or inflicted unjustifiable physical pain. Instruction 13 told the jury that Young would be guilty even if he did not intend to injure the child by his conduct or omission. At best this is confusing. At worst it misstates the law—it allowed Young to be convicted even if he made a good faith mistake believing that the treatment he provided was adequate for the injuries. Idaho Code section 18–1501(1) is a criminal statute not a barometer for stupidity. It should have been instructed as written without the embellishment of section 18–101(1), which from the context was not applicable. This was not harmless error. The case must be remanded for new trial with proper instructions.

## IV.

**THE DISTRICT COURT DID NOT ERR BY DENYING YOUNG'S REQUEST FOR A JURY INSTRUCTION REGARDING THE LESSER INCLUDED OFFENSE OF MISDEMEANOR INJURY TO A CHILD**

■ The State does not dispute that misdemeanor injury to a child, I.C. § 18–1501(2), is a lesser included offense of felony injury to a child, I.C. § 18–1501(1). This Court exercises free review over a trial court's refusal to give a jury instruction re-

**374**

garding a lesser included offense. *State v. Trevino*, 132 Idaho 888, 895, 980 P.2d 552, 559 (1999).

An instruction on a lesser included offense is mandatory if a reasonable view of the evidence would support the instruction. I.C. § 19–2132; *Trevino*, 132 Idaho at 895, 980 P.2d at 559. Misdemeanor injury to a child is ·distinguishable from the felony charge solely by the fact that the misdemeanor charge does not require the actions to be undertaken in circumstances or conditions likely to produce great bodily harm or death. I.C. § 18–1501(1)–(2). Consequently, the district court was required to give an instruction on the lesser included offense if a reasonable view of the facts would support a finding that Young's omission or failure to secure medical treatment after Michael was burned occurred in circumstances that were not likely to produce great bodily harm or death to Michael.

There is no reasonable view of the facts that would support a finding that Young ever intended to take Michael to get professional medical treatment. Therefore, the issue before the jury was not, as Young argues, whether the jurors thought they would have chosen to treat Michael at home "for a few days," but whether the decision to forego professional medical treatment altogether involved circumstances likely to cause great bodily harm or death.

The State's witness, Dr. Bond, testified that Michael suffered burns to approximately nine percent of his body, the majority of which were third-degree burns. He also testified that, while second-degree burns can heal by themselves, third-degree burns cannot. Dr. Bond testified that, while third-degree burns are initially treated with cleansing agents and antibiotic ointments, any third-degree burn greater than the size of a quarter eventually requires a skin graft. He also testified that, in his expert opinion, Michael's elevated white blood cell count, his elevated temperature, and his urinary tract infection were caused by the delay in professional medical treatment. He further testified that, had Michael been taken to a hospital sooner, he could have received medication to relieve some of his pain. Finally, he testified that before medical professionals began using skin grafts to treat burns patients with third-degree burns covering five percent of their bodies would typically live with open wounds for years, and patients with third-degree burns covering ten to twenty percent of their bodies would typically die from infections.

In sum, there is no reasonable view of the evidence to support a holding that Young's decision to completely forego professional medical care for Michael did not involve circumstances or conditions likely to cause severe bodily harm or death. Consequently, the district court did not err in refusing to give the requested instruction on the lesser included offense of misdemeanor injury to a child.

V.

**THE DISTRICT COURT DID NOT ERR BY ADMITTING PHOTOGRAPHS OF MICHAEL'S BURNS INTO EVIDENCE**

Young appeals from the district court's decision to admit photographs of Michael's burns, which were taken at St. Luke's Hospital on the day Michael was taken to the emergency room. Young points out that the photographs were taken more than fifteen hours after Michael left Young's care and, as the treating physician testified, there is often an evolution of the appearance of burns over the first few days. Consequently, Young argues, the photographs did not reflect the appearance of Michael's burns while he was in Young's care and are therefore irrelevant.

The initial question of relevancy of evidence is a question of law over which this Court exercises free review. *State v. Hairston*, 133 Idaho 496, 502, 988 P.2d 1170, 1176 (1999). Relevant evidence is "evidence having any tendency to make the existence of any fact that is of consequence to the determination of the action more or less probable than it would be without the evidence." I.R.E. 401. Young's wife and sister both testified that the photographs accurately reflected Michael's condition during part of the time he was under Young's home care. The

photographs were relevant to show the severity of Michael's burns as they appeared when Michael was in Young's care, and they had some tendency to show whether or not Young willfully and unjustifiably failed to obtain professional care for Michael. Consequently, the photographs were relevant.

 Alternatively, Young argues that even if the photographs were relevant, their relevance was substantially outweighed by the risk of unfair prejudice. "Although relevant, evidence may be excluded if its probative value is substantially outweighed by the danger of unfair prejudice...." I.R.E. 403. "Balancing of probative value against prejudice and the ultimate decision to admit or exclude the evidence is within the trial court's sound discretion." *Hairston,* 133 Idaho at 502, 988 P.2d at 1176.

The photographs depict the burns on Michael's feet, his buttocks, and his perineum, the portion of the body between the anus and the scrotum. The district court stated that the pictures were "heartrending," likely to "create a lot of sympathy on the jury," and "graphic." The photographs show severe blistering and discoloration of Michael's skin. As depicted in the photographs, the burns look extremely painful. As noted by the district court, these photographs were not merely cumulative evidence. They were directly relevant to the jury's task of determining whether Young's omission was justified, and whether it occurred under circumstances likely to cause severe bodily harm or death—elements of the offense that might otherwise be difficult to demonstrate.

Although the photographs are graphic, the district court did not abuse its discretion in determining that their relevance was not substantially outweighed by the risk of unfair prejudice.

## VI.

### CONCLUSION

The judgment of the conviction is vacated and the case is remanded for trial with proper instructions.

Chief Justice TROUT and Justice EISMANN concur.

Justice WALTERS, concurring in part and dissenting in part.

I concur in the discussion and holdings with respect to the issues addressed in parts IV and V of the majority opinion. I disagree with part III, however, and I concur in the dissent to part III written by Justice Kidwell.

Justice KIDWELL, dissenting as to part III.

I respectfully dissent as to part III of the Majority's opinion because I do not find that the jury instructions misstated the law or were apt to confuse or mislead the jury.

Young was charged with felony injury to a child under I.C. § 18–1501(1):

> Any person who, under circumstances or conditions likely to produce great bodily harm or death, willfully causes or permits any child to suffer, or inflicts thereon unjustifiable physical pain or mental suffering, or having the care or custody of any child, willfully causes or permits the person or health of such child to be injured, or willfully causes or permits such child to be placed in such situation that its person or health is endangered, is punishable by imprisonment in the county jail not exceeding one (1) year, or in the state prison for not less than one (1) year nor more than ten (10) years.

I.C. § 18–1501(1).

The district court gave the following elemental jury instruction:

> [Y]ou may find the Defendant guilty of Injury to Children Under Circumstances Likely To Produce Great Bodily Harm if each of the following are proven beyond a reasonable doubt:
>
> 1. That on or about July 2, 1998,
> 2. in the County of Canyon,
> 3. in the State of Idaho,
> 4. the Defendant Steven Paul Young,
> 5. under circumstances or conditions likely to produce great bodily harm or death,

6. *unlawfully* and willfully caused or permitted, Michael Steven Young, to suffer unjustifiable physical pain or mental suffering *by failing to provide Michael Steven Young with reasonably necessary medical treatment after the child was burned,* and

7. Michael Steven Young was under eighteen (18) years of age.

(Emphasis added). The district court also defined "unlawfully" in the jury instructions:

The word "unlawfully," as used in these instructions, means wrongfully or contrary to law or the intentional doing of something which the law forbids or makes a crime.

The pattern Idaho Criminal Jury Instructions provide, in relevant part, that to be convicted of "Injury To a Child," the state must prove that the defendant:

[willfully caused or permitted [name of child] to suffer,] [or] [willfully inflicted on [name of child] unjustifiable physical pain or mental suffering,] . . . .

ICJI 1243 Injury To A Child.

Young argues that the district court's jury instructions misstated the law and were apt to confuse and mislead the jury in two ways. First, he argues, the instructions misstated the law regarding a parent's legal duty to secure medical treatment for his or her children. Second, he argues, the instructions misstated the mental state the prosecution was required to show in order to secure a conviction.

## A. A Parent's Legal Duty To Obtain Medical Treatment For His Or Her Children

Young argues that because Instructions 10 and 13 included the phrases "unlawfully" and "by failing to provide Michael Steven Young with reasonably necessary medical treatment after the child was burned"—phrases that do not appear in either I.C. § 18–1501(1) or ICJI 1243—they misstated Idaho law and were apt to confuse and mislead the jury. Young argues that Idaho law does not impose a duty upon parents to seek medical treatment for their children and does not allow a jury to determine what medical care a parent should "reasonably" seek for their children.

The addition of the term "unlawfully," alone, although technically incorrect, did not prejudice Young. From the standpoint of an accused, it was, at worst, redundant in the context of the provisions of I.C. § 18–1501(1), which makes it unlawful to allow a child to suffer unjustifiable physical pain or mental suffering and, at best, it placed a burden on the State to prove an additional element.

Similarly, the inclusion of the language "reasonably necessary," alone or in concert with "unlawfully," did not serve to give the jury authority to decide the proper course of medical treatment for Michael in a way contrary to Idaho law. The question before the jury did not hinge on whether some collateral source of Idaho law imposes a duty upon parents to secure professional medical treatment for injuries to their children; rather, the instructions informed the jury that it must decide whether Young's failure to seek out professional medical treatment in this situation amounted to an omission sufficient to violate the prohibition against permitting a child to suffer contained in I.C. § 18–1501(1) itself. The prohibition in I.C. § 18–1501(1) plainly and logically encompasses the situation in which a parent willfully fails to seek out professional medical treatment, if the State can convince a jury that the failure was "unjustified," "willful," and "under circumstances or conditions likely to produce great bodily harm or death."

The language was not apt to confuse or mislead the jury. Idaho Code section 18–1501(1) charges the jury with the task of determining whether an act of permitting a child to suffer was "unjustifiable." Obviously, the statute contemplates the situation in which a parent may justifiably permit a child to suffer to some extent without incurring criminal liability for doing so. The phrase "reasonably necessary," contained in Instruction 10, embodies a conceptual tool likely to

be utilized by jurors in determining whether a parent was justified in permitting the suffering. The inclusion of this language did not alter the jury's task in a way that was prejudicial to Young.

Consequently, although Instruction 10 did not strictly comply with the language of I.C. § 18–1501(1) or ICJI 1243, Young cannot show prejudice resulting from that instruction.

## B. The Mental State Necessary For A Conviction Under I.C. § 18–1501(1)

The jury instructions defined "willfully" as follows:

The word "willfully," when applied to the intent with which an act is done or omitted, implies simply a purpose or willingness to commit the act or make the omission referred to. It does not require any intent to violate the law, or to injure another, or to acquire any advantage.

Young argues that he was prejudiced by the fact that the instructions indicated that the jury only needed to find that Young willfully failed to obtain professional medical treatment. Young argues that in the context of I.C. § 18–1501(1), the term "willfully" requires a finding that the defendant committed the act or omission with knowledge of the consequences of his or her actions—*i.e.*, the defendant was aware, or should have reasonably foreseen, that the conduct would bring about injury or suffering to the child.

Young's argument implicitly refers to the difference between general and specific criminal intent. "A general criminal intent requirement is satisfied if it is shown that the defendant knowingly performed the proscribed acts, but a specific intent requirement refers to that state of mind which in part defines the crime and is an element thereof." *State v. Stiffler*, 117 Idaho 405, 406, 788 P.2d 220, 221 (1990) (citations omitted). "Specific intent is a special mental element which is required above and beyond any mental state required with respect to the actus reus of the completed crime." *State v.*

*Carlson*, 134 Idaho 389, 401–02, 3 P.3d 67, 79–80 (Ct.App.2000). In *Stiffler*, this Court held that "statutory rape," under I.C. § 18–6101(1), does not require specific intent and that ignorance of the age of the victim is therefore not a defense. 117 Idaho at 407–08, 788 P.2d at 222–23. This Court focused on the fact that the legislature evidenced knowledge of the difference between general and specific intent by including specific intent requirements in two of the six subsections of I.C. § 18–6101 but not in the other four. *Id.* The Court held that, because the legislature chose not to include specific intent language in subsection one, regarding "statutory rape," the offense required only general intent, or a showing that the defendant intended to commit the actus reus. *Id.*

Idaho Code section 18–101(1) provides the general definition of "willfully" applicable to Title 18 of the Idaho Code, saying:

The following words have in this code the signification attached to them in this section, *unless otherwise apparent from the context:*

1. The word "wil[l]fully," when applied to the intent with which an act is done or omitted, implies simply a purpose or willingness to commit the act or make the omission referred to. It does not require any intent to violate law, or to injure another, or to acquire any advantage.

I.C. § 18–101 (emphasis added). This section limits its own applicability by the lead-in phrase "unless otherwise apparent from the context."

Idaho Code section 18–1501(1) does not include language that, "otherwise apparent from the context," requires a showing of intent related to something other than the actus reus. The legislature could have chosen to include specific intent language in I.C. § 18–1501(1), as it did in the theft statute, which provides that "[a] person steals property and commits theft when, *with intent to deprive another of property or to appropriate the same to himself or to a third person,* he wrongfully takes, obtains or withholds such property from an owner thereof." I.C. § 18–

2403 (emphasis added). In enacting I.C. § 18–1501, the legislature did not choose to include any such language clearly requiring specific intent. Instead, the legislature chose to generally reference the term "willfully," which is defined in terms of general intent in I.C. § 18–101. Therefore, because no different meaning is clearly indicated in the context of I.C. § 18–1501(1), the correct course is to revert to the general definition in I.C. § 18–101, which merely requires the state to show that the act or omission itself was "willfully" brought about. Additionally, within the ambit of the definition of "willfully" contained in I.C. § 18–101, lies the concept that, if a person has a purpose or willingness to commit an act or make an omission, that person must logically and necessarily intend any injury or suffering that is a reasonably foreseeable result of that act or omission. It is reasonable for a finder of fact to make such an inference based upon a showing that the defendant "willfully" acted or failed to act.

Consequently, I would hold that the State was not required to show that Young intended or had knowledge that his omission would lead to further injury or suffering by Michael in order to show a violation of I.C. § 18–1501(1) and affirm Young's conviction. Notably, this would not turn felony injury to a child into a strict liability offense that would penalize "innocent mistakes in judgment;" rather, the question of the reasonableness of the defendant's actions would be bounded by the requirement that the acts be "unjustifiable," as required by the plain language of the statute.