75 P.3d 219

STATE of Idaho, Plaintiff–Respondent,

v.

August J. HALBESLEBEN and Jeanine M. Halbesleben, Defendants–Appellants.

No. 27182.

Court of Appeals of Idaho.

July 31, 2003.

Molly J. Huskey, State Appellate Public Defender; Sara B. Thomas, Chief, Appellate Unit, Boise, for appellant. Sara B. Thomas argued.

Hon. Lawrence G. Wasden, Attorney General; Kenneth K. Jorgensen, Deputy Attorney General, Boise, for respondent. Kenneth K. Jorgensen argued.

LANSING, Chief Judge.

August and Jeanine Halbesleben were tried by jury and convicted of felony injury to a child. In this appeal, the Halbeslebens assert, among other things, that the indictment was inadequate to allege an offense and that the jury instructions did not correctly state the law. In light of the Idaho Supreme Court's recent decision in *State v. Young*, 138 Idaho 370, 64 P.3d 296 (2002), addressing how the jury must be instructed regarding the mental element in felony injury to child cases, we vacate the conviction and remand for a new trial.

## BACKGROUND

The following facts are derived from evidence presented at trial. August and Jeanine Halbesleben married in 1996, at which time August had two sons from a previous

marriage, including Tommy, the alleged victim in this case, who was born in 1990. In the summer of 1999, the Halbeslebens decided to home school Tommy after having had conflicts with his second grade teacher and school officials. At about the same time, the Halbeslebens enrolled in a parenting class that had been recommended by a school counselor. At this class, they were taught that food limitations could be used as a form of discipline.

In late 1999, Tommy began to exhibit behavior problems, including bed-wetting, violence toward younger siblings and pets, and stealing. The Halbeslebens decided to discipline Tommy by feeding him a bland diet and taking away privileges. According to the Halbeslebens, the diet was based on a food pyramid they had learned from a nutritionist, and they believed that it was nutritionally adequate. Tommy testified that on this diet he was fed oatmeal with prunes for breakfast, a bowl of plain rice, beans or noodles for lunch, and another bowl of rice, beans or noodles for dinner. The Halbeslebens testified that his meals also included peanut butter sandwiches for lunch, a vegetable for dinner, and milk with each meal. They said they did not desire to harm Tommy nor believe that his health was suffering.

In February 2000, a detective and a social worker conducting a child welfare check on Tommy declared that he was in imminent danger based upon their perception that Tommy was very small for his age and was underweight. His hands were blue, and they could see his ribs when Tommy lifted his shirt. Tommy was thereafter removed from the Halbesleben's custody. A psychiatrist who became Tommy's foster parent described him as appearing to be malnourished, with thinning hair, a distended abdomen, skin breakdown, and athlete's foot. When Tommy was taken into state custody, he ate "nonstop," gaining six pounds in the first twenty-four hours and twenty pounds within eight months.

The Halbeslebens were charged with felony injury to a child, Idaho Code § 18–1501(1). The indictment alleged that they "did under circumstances likely to produce great bodily harm or death, commit an injury upon a child under eighteen years of age, to wit: Thomas Halbesleben ... by unlawfully and willfully causing or permitting the child to be placed in a situation endangering his health or person, by failing to adequately feed him thereby causing him to only gain one-half of a pound in three and one-half years." The Halbeslebens were convicted following a jury trial. They now appeal, claiming several errors.

## ANALYSIS

### A. Sufficiency of the Indictment

■ The Halbeslebens first contend that the indictment by which they were charged did not allege all elements of the offense, and hence was jurisdictionally defective, because it did not allege that the Halbeslebens had the care or custody of Tommy. The Halbeslebens correctly point out that the portion of I.C. § 18–1501(1) under which they were prosecuted criminalizes endangerment of a child victim only if the defendant had the care or custody of the child. The statute provides as follows, with the portion under which the Halbeslebens were prosecuted italicized:

*Any person who, under circumstances or conditions likely to produce great bodily harm or death,* willfully causes or permits any child to suffer, or inflicts thereon unjustifiable physical pain or mental suffering, or *having the care or custody of any child,* willfully causes or permits the person or health of such child to be injured, or *willfully causes or permits such child to be placed in such situation that its person or health is endangered,* is punishable by imprisonment in the county jail not exceeding one (1) year, or in the state prison for not less than one (1) year nor more than ten (10) years.

For their argument that a jurisdictional flaw in the indictment was created by the omission of any allegation that the Halbeslebens had the care and custody of Tommy, the Halbeslebens rely upon our decision in *State v. Byington,* 135 Idaho 621, 622–23, 21 P.3d 943, 944–45 (Ct.App.2001). We there held that an indictment alleging the same willful endangerment offense was jurisdictionally

defective because it did not include an allegation that the defendant had the care or custody of the child victim. *Id.* at 623–24, 21 P.3d at 945–46. *Byington* differs from the present case, however, in an important aspect. A motion raising the jurisdictional defect and seeking dismissal of the charge in *Byington* was filed before trial, at a time when the prosecutor could have yet amended the indictment to cure the defect, whereas the Halbeslebens have raised their jurisdictional challenge to the indictment for the first time on appeal.

■ It is well established that the level of scrutiny that an Idaho appellate court will apply in evaluating the sufficiency of a charging document varies according to the timeliness of the challenge. *Byington*, 135 Idaho at 624, 21 P.3d at 946; *State v. Leach*, 126 Idaho 977, 978–79, 895 P.2d 578, 579–80 (Ct. App.1995). If the alleged deficiency was raised by the defendant prior to trial or entry of a guilty plea, the charging document must state all facts essential to establish the charged offense. *Byington*, 135 Idaho at 623, 21 P.3d at 945. But if the indictment or information is not challenged until after the verdict or guilty plea, it will be liberally construed in favor of validity, and a technical deficiency that does not prejudice the defendant will not provide a basis to set the conviction aside. *State v. Cahoon*, 116 Idaho 399, 400, 775 P.2d 1241, 1242 (1989); *State v. Chapa*, 127 Idaho 786, 787–88, 906 P.2d 636, 637–38 (Ct.App.1995); *State v. Robran*, 119 Idaho 285, 287, 805 P.2d 491, 493 (Ct.App. 1991). When the challenge is tardy, the charging document will be upheld on appeal unless it is so defective that it does not, by any fair or reasonable construction, charge the offense for which the defendant was convicted. *Byington*, 135 Idaho at 624, 21 P.3d at 946; *Robran*, 119 Idaho at 287, 805 P.2d at 493. In *Robran*, for example, where the defendant did not question the sufficiency of the information charging him with rape until after his conviction, we held that the information alleging that the victim's resistance was overcome "by fear," was sufficient to allow an inference that her resistance was overcome by force, or that she was prevented from resistance by threats of bodily harm, as required by the statutory definition of the offense. *Id.* We concluded that the allegations also implied the element of "lack of consent." Similarly, in *Chapa*, where the defendant, convicted of rape, raised the issue for the first time on appeal, we held that the information's allegation that the rape "was accomplished by force and violence" sufficiently carried an implication that the victim resisted but that her resistance was overcome by force or violence, which was a necessary element of the offense. Thus, in appraising a tardily challenged information or indictment, this Court has "considerable leeway to imply the necessary allegations" from the language of the document. *Robran*, 119 Idaho at 287, 805 P.2d at 493.

Consequently, in examining the Halbeslebens' argument that their indictment was insufficient to allege an offense, we do not employ the more stringent standard applied in *Byington;* rather, we liberally interpret the allegations of the indictment to determine whether the necessary "care or custody" element can be inferred. The indictment alleged that the victim had the same last name as the defendants, was six through nine years old when the offense occurred, and had been inadequately fed by the defendants over a period of more than three years. It is a fair and reasonable inference from these allegations that August Halbesleben was the victim's father and that the defendants had the "care or custody" of the victim. The Halbeslebens do not contend that they were misled or prejudiced by the omission of a formal allegation that they had the care or custody of Tommy. Therefore, we hold that the indictment was sufficient to charge them with the crime of felony injury to a child, I.C. § 18–1501(1), and to vest the district court with jurisdiction to try the case.

**B. Jury Instructions**

■ The Halbeslebens next contend that the jury instructions were inadequate because they did not inform the jury of the State's burden to prove the requisite mental element of the offense. The question whether the jury was properly instructed is one of law over which this Court exercises free review. *State v. Avila*, 137 Idaho 410, 414, 49 P.3d 1260, 1264 (Ct.App.2002). The instruc-

tions must inform the jury on all matters of law necessary for the jury's information. I.C. § 19–2132(a). This requires that the instructions include every element of the charged offense that the State is obligated to prove. *State v. Nath,* 137 Idaho 712, 716–17, 52 P.3d 857, 861–62 (2002); *State v. Buckley,* 131 Idaho 164, 165, 953 P.2d 604, 605 (1998); *State v. Crowe,* 135 Idaho 43, 47, 13 P.3d 1256, 1260 (Ct.App.2000). Jury instructions that omit an element of the crime lighten the prosecution's burden of proof and are impermissible. *Id.* An instructional error requires reversal of a judgment of conviction if the instructions misled the jury or prejudiced the defendant. *State v. Hanson,* 130 Idaho 842, 844, 949 P.2d 590, 592 (Ct.App.1997).

In the present case, the "elements instruction" told the jurors that they must find the Halbeslebens guilty if the State proved that during a specified period of time the Halbeslebens had the care and custody of Tommy Halbesleben, who was a child under the age of eighteen, and that the Halbeslebens "willfully caused or permitted the child to be placed in a situation that was likely to have endangered the child's person or health." Another instruction, which was based on the definition of "willfully" found in I.C. § 18–101(1), further informed the jurors: "An act is 'willful' or done 'willfully' when done on purpose. One can act willfully without intending to violate the law, to injure another, or to acquire any advantage." The Halbeslebens maintain that these instructions were inadequate and misled the jury because the endangerment clause of I.C. § 18–1501 under which they were prosecuted "must be interpreted to include either an element of knowledge on the part of the defendants or reasonable foreseeability of harm." Because the trial court declined to so instruct the jury and refused the defendants' requested instruction on a mistake-of-fact defense, the Halbeslebens assert that they are entitled to a new trial.

We conclude that the Halbeslebens' argument is well taken in light of the Idaho Supreme Court's recent decision in *Young,* 138 Idaho 370, 64 P.3d 296. *Young* involved the prosecution of a father for his failure to seek medical care for burns sustained by his son. The father was charged with violating that portion of I.C. § 18–1501(1) which declares it a felony if a person "willfully causes or permits any child to suffer, or inflicts thereon unjustifiable physical pain or mental suffering." The jury instructions in *Young* included an instruction employing the foregoing language from the statute to define the elements of the offense and also included an instruction, similar to the one used in the present case, defining the word "willfully" as follows:

> The word "willfully," when applied to the intent with which an act is done or omitted, implies simply a purpose or willingness to commit the act or make the omission referred to. It does not require any intent to violate the law, or to injure another, or to acquire any advantage.

The Idaho Supreme Court concluded that use of this definition of "willfully" misled the jury about the mental element of the offense of injury to a child and required that Young be given a new trial. The Court stated that although the jury instruction defining the crime in the language of I.C. § 18–1501(1) correctly told the jury that the State must prove that the defendant willfully caused or permitted the child to suffer, the instruction defining "willfully" told the jury, in contradiction, that the defendant would be guilty even if he did not intend to injure the child by his conduct or omission. The Court noted that I.C. § 18–101 specifies that the definition of "willfully" there provided is to be applied "unless otherwise apparent from the context" of the statute where the term is used, and the Court deemed it apparent from the context of § 18–1501(1) that the § 18–101(1) definition should not be utilized. The Supreme Court explained:

> A plain reading of section 18–1501(1) indicates that its purpose is to punish conduct or inaction that intentionally causes a child to suffer. In this case application of the statute would require that the State prove that Young failed to take the child for medical treatment after the child was burned and that this failure was done with the knowledge that it would cause the child to suffer or would inflict unjustifiable physical pain or mental suffering. The purpose of the statute is not to punish mistakes in

**170**

judgment that are reviewed in hindsight.... Otherwise custodians of children may be subjected to criminal penalties for good faith decisions that turn out poorly— innocent mistakes in judgment.

*Young*, 138 Idaho at 373, 64 P.3d at 299.

We recognize that in *Young*, the Court was focusing on a clause within § 18–1501(1) other than the endangerment provision under which the Halbeslebens have been prosecuted. In *Young*, the clause at issue was "willfully causes or permits any child to suffer," while in the present case the Halbeslebens were prosecuted under the clause prohibiting conduct that "willfully causes or permits [a] child to be placed in such situation that its person or health is endangered." Nevertheless, we conclude that the holding in *Young* is instructive here. The "willfulness" element of the endangerment offense applies not merely to the act of placing a child in a particular situation but also to the endangerment. That is, the offense occurs only if the custodian willfully endangers the child by subjecting the child to a known risk of harm. Unlike the clause at issue in *Young*, this does not require that the defendant intended to harm the child, but it does require that the defendant placed the child in a potentially harmful situation with knowledge of the danger. If the endangerment clause of § 18–1501(1) were interpreted as not requiring awareness of the danger or hazard, it would criminalize "good faith decisions that turn out poorly," an interpretation rejected by the Supreme Court in *Young*.

Accordingly, we hold that it was error for the district court to give the instruction based upon the I.C. § 18–101(1) definition of "willfully" because, as in *Young*, the instruction did not correctly describe the state of mind element of the offense and may have led the jury to believe that the defendants would be guilty even if they did not intentionally or knowingly endanger the child.

We further conclude that, when a defendant is prosecuted under the endangerment clause, some instruction on mens rea, beyond merely quoting the statute, is required to ensure that the jury understands the scope of the mental element. Otherwise, the phrase "willfully causes or permits such child to be placed in such situation that its person or health is endangered" might be interpreted by the jury as proscribing the act of willfully placing a child in a situation that was apparently safe, but that ultimately endangered the child. Such a misinterpretation would relieve the State of the burden to prove that the defendants willfully subjected the child to danger. Indeed, that appears to be the way it was interpreted by the prosecutor in this case, who told the jury in closing argument: "I don't have to prove that they intended to injure him. I don't have to prove that. *All I have to prove is that they purposely did the acts that exposed him to the harm*." (Emphasis added.) Consequently, we hold that, when a defendant is tried for a violation of the endangerment clause of I.C. § 18–1501(1), the jury should be instructed that the State's burden includes a burden to prove that the defendant knew that the situation into which the child was placed would endanger the person or health of the child.

Because the jury instructions utilized at the Halbeslebens' trial included an inappropriate definition of "willfully" and did not adequately inform the jury that the State must prove the defendants' awareness of the danger to which the child was subjected, the instructions were erroneous.[1] This error cannot be deemed harmless. The Halbeslebens presented evidence that they believed, in good faith, that the diet they were feeding Tommy was nutritionally adequate and an appropriate means of discipline. The instructions allowed the Halbeslebens, like the defendant in *Young*, to be convicted even if they made a good faith mistake. Because the jury instructions lessened the State's

1. We recognize that the instructions used by the district court followed the pattern Idaho Criminal Jury Instructions, which are presumptively correct. *See State v. Merwin*, 131 Idaho 642, 647, 962 P.2d 1026, 1031 (1998). It is our judgment, however, that where a prosecution is based on the endangerment clause of § 18–1501(1), the applicable pattern instruction, ICJI 1243, standing alone, is inadequate to convey to the jury the requirement that the State prove the defendants' awareness of the risk of harm.

burden of proof, we must vacate the conviction and remand for a new trial.[2]

## C. Remaining Issues

The Halbeslebens have also presented a constitutional challenge to I.C. § 18–1501(1). They argue that the statute is unconstitutionally vague as applied to them because it does not provide notice that a parent or custodian may be in violation for innocent acts taken with no intention or expectation of placing a child in danger. Because we construe the statute to require knowledge of the danger, however, this constitutional issue evaporates.

Lastly, the Halbeslebens argue that the district court erred by allowing a discrepancy between the jury instructions and the indictment. The indictment alleged that the Halbeslebens endangered Tommy by failing to adequately feed him, and that this situation "cause[d] him to only gain one-half of a pound in three and one-half years." At trial, the State presented expert testimony regarding a number of additional physiological harms, apart from poor weight gain, that could befall a child who received inadequate nutrition. The jury instructions did not limit the jury to consideration of the type of harm alleged in the indictment. Consequently, the Halbeslebens contend, the instructions were erroneous because they allowed the Halbeslebens to be convicted for inflicting harms other than the one referenced in the indictment. The State responds that this issue was not preserved by objection below and that, in any event, the claimed discrepancy is inconsequential because under the endangerment clause of I.C. § 18–1501(1), actual injury or harm is not an element of the crime, and endangerment alone is sufficient for commission of the offense.

The legal standard governing this claim of error is set forth in *State v. Headlee*, 121 Idaho 979, 981, 829 P.2d 869, 871 (Ct.App. 1992). "Insofar as the language of the [charging document] goes beyond alleging elements of the crime, it is mere surplusage that need not be proved. However, the inclusion of surplusage must not be allowed to prejudice a defendant in the context of his case." (Citations omitted.) We need not determine whether this issue was waived below or whether the asserted surplusage in the Halbeslebens' indictment, which was not carried into the jury instructions, prejudiced the Halbeslebens because we have already determined that they must receive a new trial. Because the State may seek to amend the indictment on remand and the parties will have an opportunity to refashion the jury instructions, it is unlikely that this claimed discrepancy will occur again.

## CONCLUSION

The indictment against the Halbeslebens sufficiently alleged the elements of the charged offense, but the jury instructions utilized in their trial were erroneous, allowing the Halbeslebens to be convicted in the absence of a finding that they knowingly exposed the child to danger. Therefore, the judgment of conviction is vacated. The matter is remanded to the district court for a new trial.

Judge GUTIERREZ and Judge Pro Tem MELANSON concur.

---

**2.** If a jury is properly instructed on the elements of the willful endangerment offense as outlined herein, a mistake-of-fact instruction like that re- quested by the Halbeslebens will generally not be necessary.