IN THE COURT OF APPEALS OF THE STATE OF IDAHO
Docket No. 40682

| | | |
|---|---|---|
| STATE OF IDAHO, | ) | |
| | ) | 2014 Opinion No. 80 |
| Plaintiff-Respondent, | ) | |
| | ) | Filed: September 29, 2014 |
| v. | ) | |
| | ) | Stephen W. Kenyon, Clerk |
| ANTHONY EDWARD ORTEGA, | ) | |
| | ) | |
| Defendant-Appellant. | ) | |
| | ) | |

Appeal from the District Court of the Fourth Judicial District, State of Idaho, Ada County. Hon. Deborah A. Bail, District Judge.

Judgment of conviction for two counts of felony injury to a child, <u>affirmed</u>.

Sara B. Thomas, State Appellate Public Defender; Brian R. Dickson, Deputy Appellate Public Defender, Boise, for appellant. Reed P. Anderson argued.

Hon. Lawrence G. Wasden, Attorney General; Jessica M. Lorello, Deputy Attorney General, Boise, for respondent. Jessica M. Lorello argued.

_____

SCHWARTZMAN, Judge Pro Tem

Anthony Edward Ortega was convicted of two counts of felony injury to a child. He argues that the court erred in two respects. First, he claims that the court impermissibly allowed the State to present evidence of his prior abusive conduct toward very young children. Second, he claims that the court erred by failing to instruct the jury that reasonable parenting efforts could not be the basis of an injury to a child charge. We affirm the judgment of conviction.

## I.

## BACKGROUND

Ortega was charged with two counts of felony injury to a child, Idaho Code § 18-1501(1). The first charge alleged that Ortega caused his two-year-old child, A.O., to suffer a spiral fracture of the humerus bone; the second alleged that Ortega struck or hit the child on his buttocks, abdomen, and chest.

1

Before trial, the State filed notice of its intent to adduce evidence of Ortega's prior abusive parenting to "rebut any claim of accidental touching." At a pretrial conference, the parties made clear that they disputed the admissibility of that evidence and the State indicated that it intended to introduce additional prior bad act evidence beyond those acts described in its motion. The court decided that the evidence described in the State's initial filing was admissible and scheduled another pretrial hearing to address the additional evidence. In response, Ortega filed a motion to reconsider, arguing that the evidence was not relevant and was prejudicial. The court considered the admissibility of all the prior bad act evidence at the second pretrial hearing. It ruled that the evidence was relevant because it could "establish a pattern . . . that is relevant to the resolution of the issues in this case." It also ruled that the probative value of the evidence substantially outweighed any prejudicial effect. On these grounds, the court held that the evidence could be admitted.

The case proceeded to a jury trial. In opening statements, both the State and Ortega framed the case as a dispute over the cause of the child's injuries. The State asserted that Ortega was an impatient father who disciplined his two-year-old son very harshly, while Ortega maintained that the injuries resulted from accidents or other noncriminal causes.

The State called several witnesses whose testimony included Ortega's contemporaneous descriptions of how A.O. was injured. Each testified that Ortega claimed that the injury to the child's arm was accidental, resulting from the child falling or being accidentally dropped when being taken out of his car seat. The State attempted to rebut Ortega's account through medical testimony and by referring to Ortega's prior conduct.

Two physicians testified regarding the arm injury, the emergency room treating physician and the Medical Director of Children at Risk Evaluation Services (CARES). The treating physician testified that the spiral fracture was not a typical result of a fall because that injury usually indicates twisting. Moreover, a falling person, especially one who breaks his arm, usually strikes the ground with his palms down. A.O. had no injuries on his hands despite falling onto pavement. Finally, the physician observed an abrasion or contusion circling the child's arm, which would not have resulted from a fall. The CARES doctor testified that the child's arm injury was not consistent with a fall. Based upon these observations, the doctor concluded that:

> The amount of force that [it] would have taken to cause that kind of fracture is more than if you were just picking your child up by under the arm or elbow during normal play or normal care.

2

The amount of force required to cause such an injury is enough that a reasonable person would know that they could harm the child.

The CARES doctor also testified regarding the injuries to the child's buttocks. He noted that toddlers frequently bruise while they learn to walk and that the minor bruising on the child's shins was typical. However, a toddler's exhibiting bruising of the buttocks and chest is not typical. Normal play or toddler activities would not cause the extensive bruising on the child's buttocks. For example, a toddler scooting down a flight of stairs on his buttocks, even roughly, would not result in that bruising. Moreover, the physician opined that the bruising looked patterned. Based upon these observations, he concluded that "a significant amount of force would have had to have been used to cause those bruises."

The State also called three of the child's extended family members to testify regarding Ortega's prior abusive parenting. The child's maternal grandmother had previously observed bruising on the child's buttocks. Ortega admitted that he had spanked the child too hard and the grandmother had told Ortega to stop spanking so hard. Later, Ortega claimed that some bruising was caused when the child was placed onto an adult-sized toilet during potty-training. The grandmother gave Ortega a smaller, padded device that should have ameliorated the issue, but the child's buttocks were more extensively bruised when he was examined in the hospital after using the device.

The grandmother's boyfriend testified that he had observed three violent outbursts by Ortega toward very young children. First, after seeing A.O. bite another child, Ortega slapped A.O. so hard that his lips and gums bled. Second, Ortega disciplined another young boy by grabbing him by the neck, hard enough to leave a visible red mark. This incident was so severe that the boyfriend threatened Ortega with physical violence. Third, the boyfriend saw Ortega grab A.O. by the arm and "snap him around" in a quick, jerking motion.

Finally, A.O.'s great-grandmother testified that she had observed Ortega disciplining the two-year-old child for being too loud in a shoe store. Ortega chose to discipline the child by grabbing and holding his nose so tightly that he left a red mark.

Ortega chose not to testify at trial. His defense predominantly consisted of several witnesses who testified that he was a good father. For example, a high school friend, who had seen Ortega interact with his son on only a single occasion, testified that A.O. seemed happy around Ortega. A former girlfriend testified that, for the one-month period she was around both

Ortega and the child, Ortega was a "great dad," that he never physically disciplined A.O. in her presence, and that the child had no significant bruising.

After the close of evidence, the court held a brief hearing regarding jury instructions. As is relevant here, the court considered Ortega's previously-deferred motion requesting a jury instruction based on language in *State v. Peters*, 116 Idaho 851, 855, 780 P.2d 602, 606 (Ct. App. 1989). Ortega provided the full text of his proposed instruction:

> The State of Idaho recognizes that a parent may punish a child using a reasonable amount of force to safeguard and promote the child's welfare. A parent may punish a minor child for wrongdoing so long as such punishment is for this beneficial purpose. The punishment must not be excessive and the degree of harm to the child must not exceed what is commonly viewed as reasonable in light of the circumstances.

The district court rejected the proposed instruction and instead gave the model Idaho Criminal Jury Instruction describing the elements of the offense as follows:

> In order for the Defendant to be guilty of Felony Injury to a Child as charged in Count One, the State must prove each of the following:
> 1. On or about the 20th day of April, 2012.
> 2. in the state of Idaho.
> 3. the Defendant, Anthony Edward Ortega.
> 4. willfully caused or permitted [the child] to suffer unjustifiable physical pain or mental suffering, by causing a spiral fracture of the humerus bone;
> 5. [the child] was under 18 years of age; and
> 6. the above occurred under circumstances or conditions likely to produce great bodily harm or death to [the child].
> If any of the above has not been proven beyond a reasonable doubt, you must find the Defendant not guilty. If each of the above has been proven beyond a reasonable doubt, then you must find the Defendant guilty.[1]

The court also instructed the jury on the meaning of willfulness:

> The word "willfully" means acting or failing to act where a reasonable person would know the act or failure to act is likely to result in injury or harm or is likely to endanger the person, health, safety or well-being of the child.

---

[1] The trial judge listed four reasons for her decision: First, it was not an approved Idaho Criminal Jury Instruction. Second, the decision in *State v. Peters*, 116 Idaho 851, 780 P.2d 602 (Ct. App. 1989) did not require giving the instruction because it "relates to the discussion about why the statute is not unconstitutionally vague when applied to a situation where a parent is unprotective." Third, the issue of reasonable parent practices was sufficiently addressed by the model jury instruction. Fourth, any additional instruction on that issue was likely to result in confusion.

During closing argument Ortega maintained, *inter alia*, that one need not agree with Ortega's parenting style to acquit because no one style of parenting is required. The State responded by arguing that different styles of parenting are permitted, but distinguished the type of abusive parenting it had alleged in the charging document. The jury returned guilty verdicts on both counts. After a sentencing hearing, the court imposed a unified term of imprisonment of fifteen years with five years fixed on each count, to run concurrently.[2]

## II.

## ANALYSIS

Ortega appealed the judgment of conviction and maintains that the court erred by permitting the State to adduce evidence of his prior incidents of abusive parenting and by refusing to give his requested jury instruction.

### A.    The Court Did Not Err by Admitting Prior Bad Act Evidence

Ortega argues that the district court erred by allowing the State to adduce evidence of his prior abusive parenting because neither mistake nor intent was implicated in the case. He also claims that evidence was more prejudicial than probative.

The evidence rule in question, Idaho Rule of Evidence 404(b), provides:

> Evidence of other crimes, wrongs, or acts is not admissible to prove the character of a person in order to show that the person acted in conformity therewith. It may, however, be admissible for other purposes, such as proof of motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake or accident, provided that the prosecution in a criminal case shall file and serve notice reasonably in advance of trial, or during trial if the court excuses pretrial notice on good cause shown, of the general nature of any such evidence it intends to introduce at trial.

This rule prohibits introduction of evidence of acts other than the crime for which a defendant is charged if its probative value is entirely dependent upon its tendency to demonstrate the defendant's propensity to engage in such behavior. *State v. Grist*, 147 Idaho 49, 54, 205 P.3d 1185, 1190 (2009). *See also State v. Avila*, 137 Idaho 410, 412, 49 P.3d 1260, 1262 (Ct. App. 2002). Of course, evidence of a prior crime, wrong, or act may implicate a person's character while also being relevant and admissible for some permissible purpose, such as those listed in the rule. *See State v. Pepcorn*, 152 Idaho 678, 688-89, 273 P.3d 1271, 1281-82 (2012).

---

[2]    Ortega was sentenced as a persistent violator.

When determining the admissibility of evidence to which a Rule 404(b) objection has been made, the trial court must first determine whether there is sufficient evidence of the other acts that a reasonable jury could find the conduct actually occurred.[3] If so, then the court must consider: (1) whether the other acts are relevant to a material and disputed issue concerning the crime charged, other than propensity; and (2) whether the probative value is substantially outweighed by the danger of unfair prejudice. *Grist*, 147 Idaho at 52, 205 P.3d at 1188; *State v. Parmer*, 147 Idaho 210, 214, 207 P.3d 186, 190 (Ct. App. 2009). We exercise free review of the trial court's relevancy determination. *State v. Sheldon*, 145 Idaho 225, 229, 178 P.3d 28, 32 (2008). However, the trial court's balancing of the probative value of the evidence against the danger of unfair prejudice will not be disturbed unless we find an abuse of discretion. *State v. Norton*, 151 Idaho 176, 190, 254 P.3d 77, 91 (Ct. App. 2011).

### 1. The evidence was relevant to a nonpropensity issue

Ortega argues that because his intent was not at issue, the State should not have been permitted to adduce I.R.E. 404(b) evidence to show intent. To this end, he argues that this case is analogous to *State v. Roach*, 109 Idaho 973, 712 P.2d 674 (Ct. App. 1985) and distinguishable from *Parmer*, 147 Idaho 210, 207 P.3d 186.

In *Roach*, we concluded that intent was not at issue in a case where the defendant was charged with lewd and lascivious conduct with a minor child. *Roach*, 109 Idaho at 975, 712 P.2d at 676. Although the State had a burden to show specific intent, the required intent could be easily inferred from the acts. Because of the nature of the alleged acts, sodomy and fellatio, evidence that the acts occurred amounted to proof of the defendant's intent to gratify his lust or sexual desires. Moreover, "Roach's defense was that he did not commit the act. He [did] not, as well he could not, contend that he committed the act with innocent intent." *Id.* Conversely, in *Parmer* the defendant, in the course of providing massage services, placed a vibrator on a victim's inner thigh to cause sexual arousal. In that case, we held that I.R.E. 404(b) evidence was relevant to show absence of mistake or accident or defendant's intent, which was squarely at issue. *Parmer*, 147 Idaho at 220, 207 P.3d at 196.

---

[3]  In this case, Ortega does not challenge the prior bad acts as established facts. Therefore, we address only the relevancy and unfair prejudice issues.

"[T]he admissibility of evidence of other crimes, wrongs, or acts to establish intent and an absence of mistake or accident is well established, particularly in child abuse cases." *State v. Hassett*, 124 Idaho 357, 362, 859 P.2d 955, 960 (Ct. App. 1993) (quoting *United States v. Harris*, 661 F.2d 138, 142 (10th Cir. 1981)). The proper question is not whether the jury may use prior bad acts to determine whether specific conduct occurred, the proper question is whether the other acts are relevant to a material and disputed issue concerning the crime charged, other than propensity. *Grist*, 147 Idaho at 52, 205 P.3d at 1188. Thus, the court must determine the basis upon which the jury could infer, from the prior bad acts adduced, that the defendant was more likely to have committed the offense. The rule barring propensity evidence prohibits the admission of evidence when the only logical inference to be drawn consists of nothing more than reasoning that the defendant is a bad person, or a particular kind of bad person, and he is likely to commit criminal offenses generally, or this type of criminal offense specifically, because of his bad nature. Here, the evidence was properly admitted because there existed an alternative, permissible inference.

Idaho Rule of Evidence 404(b) permits the State to prove intent or absence of mistake or accident by means of prior bad acts when those issues are material. Here, both issues were material because the State was unable to produce a witness who could describe the precise means by which A.O. was injured and because Ortega presented argument and evidence in support of the contention that the injury was accidental. In opening remarks, Ortega argued that "accidents can and do happen and did happen in this case." In a recorded call to 911 emergency services, Ortega claimed that the child slipped out of his hands accidentally. Moreover, on cross-examination, and in his case-in-chief, Ortega adduced evidence that he was a caring father who would not hurt his son.

In this case, the jury need not have reasoned that bad people do bad things because that is their nature. Instead, it could infer that Ortega violently punished toddlers for minor infractions and was violent toward them when frustrated; because of the prior acts, the injury caused by his action or inaction was likely intentional and unlikely to be accidental. That inference is permitted under the intent and absence of mistake or accident exceptions in I.R.E. 404(b) and is distinguished from mere propensity evidence when either intent or absence of mistake or accident is a material and disputed issue in a case. *Parmer*, 147 Idaho at 220, 207 P.3d at 196.

7

**2.** **The probative value of the admitted evidence was not substantially outweighed by the danger of unfair prejudice**

Ortega argues that the I.R.E. 404(b) evidence had limited probative value and was substantially prejudicial. We agree that there was some danger of unfair prejudice because the evidence tended to show that Ortega was a violent person and an abusive parent. It is not unreasonable to conclude that the average juror holds those who abuse toddlers in low esteem. However, the evidence was probative, especially as to the second injury to a child charge.

Above, we discussed the relevance of the prior bad acts to the broken arm charge, but Ortega was also charged with striking or otherwise causing significant bruising to the two-year-old child. The evidence was probative to that charge because Ortega argued he was acting as a reasonable parent, i.e., asserting an intent defense, and the prior bad acts were particularly strong evidence that Ortega was not acting as a reasonable parent, but was acting in an unjustifiably violent manner. The trial court found such evidence highly relevant and close in time, such that its probative value substantially outweighed any danger of unfair prejudice. We conclude that the district court did not abuse its discretion in this regard.

**B.** **The Court Did Not Err by Refusing to Give the Requested Jury Instruction**

Ortega argues that a parent may "defend against a charge of child abuse by asserting a defense of reasonable parenting efforts." Further, he argues that the requested instruction was required to inform the jury of that defense.

Whether the jury has been properly instructed is a question of law over which we exercise free review. *State v. Severson*, 147 Idaho 694, 710, 215 P.3d 414, 430 (2009). In determining whether the trial court should have given a requested jury instruction, we must examine the instructions that were given and the evidence adduced at trial. *State v. Hoover*, 138 Idaho 414, 421, 64 P.3d 340, 347 (Ct. App. 2003); *State v. Fetterly*, 126 Idaho 475, 476, 886 P.2d 780, 781 (Ct. App. 1994). We apply a four-part test to determine whether a requested jury instruction should have been given:

> a requested instruction must be given where: (1) it properly states the governing law; (2) a reasonable view of the evidence would support the defendant's legal theory; (3) it is not addressed adequately by other jury instructions; and (4) it does not constitute an impermissible comment as to the evidence.

*Hoover*, 138 Idaho at 421, 64 P.3d at 347; *Fetterly*, 126 Idaho at 476-77, 886 P.2d at 781-82; *State v. Evans*, 119 Idaho 383, 385, 807 P.2d 62, 64 (Ct. App. 1991).

8

Reasonable parenting efforts can be a valid defense to a felony injury to a child charge because such conduct would not amount to an offense under the applicable law. However, a separate jury instruction is not required because the jury will be informed of the elements of the offense and the requirement that each element be proven before returning a guilty verdict.

In *State v. Young*, 138 Idaho 370, 373, 64 P.3d 296, 299 (2002), the Supreme Court held that the injury to a child statute required the State to prove the required mental element of willfully causing unjustifiable physical pain. *See also State v. Halbesleben*, 139 Idaho 165, 170, 75 P.3d 219, 224 (Ct. App. 2003) (applying the same rule to another portion of the injury to a child statute). There, the erroneous definition of the *mens rea* element was reversible error because that incorrect instruction would allow a defendant "to be convicted even if he made a good faith mistake." The corollary of our holding is that a proper *mens rea* instruction would preclude a conviction based upon a "good faith mistake." Accordingly, *Young* stands for the proposition that the reasonable parenting efforts defense is included within a proper *mens rea* instruction.

Despite Ortega's contrary argument, *Peters*, 116 Idaho at 855, 780 P.2d at 606 provides no basis for the giving of a special instruction. There, the defendant argued that the statute was void for vagueness because it failed to provide adequate notice of what parental discipline is permitted and what conduct would violate the statute. We disagreed and held that the statute was not void for vagueness because the *mens rea* element limited the scope of the offense. In essence, the *mens rea* included in the injury to a child statute defines the border between reasonable parenting practices and criminal child abuse.

Accordingly, we conclude that a defendant may properly argue that his actions amounted to reasonable parenting efforts, but that doing so is not a distinct defense, such as self-defense; rather, it raises a challenge to the State's ability to prove the required *mens rea* element of injury to a child. The requested instruction was not required to inform the jury of Ortega's defense; that defense is implicit in the instructions defining the offense. Therefore, we find no error in the district court's refusal to give the requested instruction.

## III.
### CONCLUSION

We conclude that the district court did not err in permitting the State to adduce prior bad act evidence. We also conclude that the district court did not err by refusing to give Ortega's requested jury instruction. Therefore, the judgment of conviction is affirmed.

Judge GRATTON and Judge MELANSON **CONCUR.**