84 P.3d 579

**STATE of Idaho, Plaintiff–Respondent,**

v.

**Farron Rusty MAYER, Defendant–Appellant.**

No. 29030.

Court of Appeals of Idaho.

Jan. 16, 2004.

Moss, Cannon, Romrell, Castelton, P.A., Blackfoot, for appellant.

Hon. Lawrence G. Wasden, Attorney General; Kenneth K. Jorgensen, Deputy Attorney General, Boise, for respondent.

LANSING, Chief Judge.

Farron Rusty Mayer pleaded guilty to battery with the intent to commit rape. Before he was sentenced, but after he had been informed of the State's sentencing recommendation, he moved for dismissal of the charge and for withdrawal of his guilty plea. These motions were based principally on the contentions that the information did not allege, and Mayer had not understood when pleading guilty, that intent to commit rape required an intent to sexually penetrate the victim. The district court denied both motions, and Mayer appeals. We affirm.

## I.

## FACTUAL & PROCEDURAL BACKGROUND

On June 24, 2001, Mayer attended a party at the residence of Brandy Powell, where both he and Powell consumed alcohol. Mayer claims to have little memory of what took place, but according to Powell, after she had gone to bed the night of the party, she awakened to find Mayer on top of her. His pants were off and hers were partially pulled down, and Powell felt Mayer touching her vaginal area. She pushed him off. Powell's husband then awoke and saw Mayer hiding under the bed with his pants off. Mayer was charged with battery with the intent to commit rape, Idaho Code § 18–911.

Mayer eventually pleaded guilty. Defense counsel thereafter received the presentence investigation report and telephoned Mayer to inform him that the report recommended a "rider,"[1] which would mean that if the recommendation were followed, Mayer would not immediately receive probation. Mayer retained new counsel and moved to withdraw his guilty plea on the ground that it was not made knowingly, intelligently and voluntarily, and was a product of ineffective assistance of counsel. He also filed a motion to dismiss the felony charge, arguing that the information was defective because in alleging the intent to rape, it did not specify that the offense encompassed an intent to penetrate the victim. Both motions were denied. Mayer now appeals, contending that the district court erred in denying the two motions.

## II.

## ANALYSIS

### A. Motion to Dismiss

Mayer first asserts that this criminal action should have been dismissed because the information was jurisdictionally defective in that it did not allege all of the elements of the offense. Mayer contends that the information's allegation that he committed a battery with the intent to rape the victim was inadequate because it did not allege the elements of rape and in particular did not allege that Mayer intended to penetrate the victim with his penis.[2]

> Rape is defined as the penetration, however slight, of the oral, anal or vaginal opening with the perpetrator's penis accomplished with a female under either of the following circumstances:
>
> . . . .
>
> (3) Where she resists but her resistance is overcome by force or violence.
>
> (4) Where she is prevented from resistance by threats of immediate and great bodily harm, accompanied by apparent power of execution; or by any intoxicating, narcotic, or anesthetic substance administered by or with the privity of the accused.

1. A rider is a period after sentence is imposed during which the sentencing court retains jurisdiction while the defendant is evaluated by the Department of Correction. At the end of the rider, the court may relinquish jurisdiction, thereby requiring the defendant to serve the balance of his sentence of incarceration, or may place the defendant on probation. See I.C. § 19–2601(4); State v. Toohill, 103 Idaho 565, 567, 650 P.2d 707, 709 (Ct.App.1982).

2. Idaho Code § 18–6101, as it existed at the time of Mayer's offense, defined rape as follows in pertinent part:

▇▇ A charging document will be deemed so flawed that it fails to confer jurisdiction on the court if the facts alleged are not made criminal by statute or if the document fails to state facts essential to establish the offense charged. *State v. Byington,* 135 Idaho 621, 623, 21 P.3d 943, 945 (Ct.App. 2001); *Hays v. State,* 113 Idaho 736, 739, 747 P.2d 758, 761 (Ct.App.1987), *aff'd,* 115 Idaho 315, 316, 766 P.2d 785, 786 (1988). Although a jurisdictional defect is not waived by a guilty plea, *Byington,* 135 Idaho at 623, 21 P.3d at 945, the timing of Mayer's challenge to the information, coming only after he had pleaded guilty, affects the level of scrutiny that we will apply in evaluating the sufficiency of the information. If an alleged deficiency is raised by a defendant before trial or entry of a guilty plea, the charging document must state all facts essential to establish the charged offense, *State v. Halbesleben,* 139 Idaho 165, 168, 75 P.3d 219, 222 (Ct.App. 2003); *Byington,* 135 Idaho at 623, 21 P.3d at 945; but if the information is not challenged until after a verdict or guilty plea, "it will be liberally construed in favor of validity, and a technical deficiency that does not prejudice the defendant will not provide a basis to set the conviction aside." *Halbesleben,* 139 Idaho at 168, 75 P.3d at 222; *State v. Cahoon,* 116 Idaho 399, 400, 775 P.2d 1241, 1242 (1989); *State v. Robran,* 119 Idaho 285, 287, 805 P.2d 491, 493 (Ct.App.1991). Thus, if the challenge is tardy, the charging document will be upheld on appeal "unless it is so defective that it does not, by any fair or reasonable construction, charge the offense for which the defendant was convicted." *Halbesleben,* 139 Idaho at 168, 75 P.3d at 222. *See also Robran,* 119 Idaho at 287, 805 P.2d at 493. Because Mayer did not challenge the information here until after his guilty plea, we exercise "considerable leeway to imply the necessary allegations" within the language of the information. *Robran,* 119 Idaho at 287, 805 P.2d at 493.

▇▇ Here, after stating that Mayer was charged with battery with intent to commit rape, and citing I.C. §§ 18–903(b) and 18–911, the information alleged that he "did

(5) Where she is at the time unconscious of the nature of the act, and this is known to the

actually, intentionally, and unlawfully touch the person of Brandy Powell against her will with the intent to commit the crime of Rape by partially disrobing her and touching her vaginal area with his hand and/or penis." Mayer contends that the words "with the intent to commit the crime of rape," are insufficient to allege the specific intent element of battery with intent to commit rape. He contends that "rape" had to be described as it is defined in I.C. § 18–6101, requiring penetration of the victim's oral, anal or vaginal opening with the perpetrator's penis.

We are not persuaded. Although the better practice may be to provide such detail in the charging document, the information here is not jurisdictionally defective. Mayer's argument is very similar to that rejected by this Court in *Noel v. State,* 113 Idaho 92, 741 P.2d 728 (Ct.App.1987), where the defendant had pleaded guilty to assault with intent to commit murder and subsequently asserted that the charging information was defective because it omitted reference to malice aforethought in alleging intent to commit murder. That is, Noel argued, like Mayer, that elements of the "intended" crime had to be alleged in detail. In rejecting Noel's contention, we stated:

> This omission was not truly jurisdictional. It did not render the information so defective that it failed to charge a crime. The charge was simply incomplete.

*Id.* at 94, 741 P.2d at 730. Likewise, in Mayer's case the information alleges facts sufficient to state an offense and therefore is sufficient to confer jurisdiction. As will be more thoroughly discussed below concerning Mayer's claim that he pleaded guilty without an understanding of the mental element of the offense, the term "rape," even as used in the everyday language of nonlawyers, refers to sexual penetration. The pleading here was sufficient to state the essential facts constituting the charged offense.

**B. Motion to Withdraw Guilty Plea**

**1. Defendant's awareness of the intent element**

▇▇ Mayer next challenges the denial of his motion to withdraw his guilty plea. He

accused.

contends that he entered the plea without the requisite understanding of the nature of the charge because neither the court nor his attorney informed him that the intent to commit rape meant an intent to penetrate the victim. Mayer contends that he never intended penetration nor admitted to having such intent.

Under Idaho Criminal Rule 33(c), the withdrawal of a guilty plea may be allowed in the trial court's discretion. The scope of that discretion is affected by the timing of the motion. Where the motion is filed before sentencing, the defendant need only show a "just reason" for withdrawing the plea, but after sentencing, the plea may be set aside only to correct manifest injustice. I.C.R. 33(c); *State v. Ballard,* 114 Idaho 799, 801, 761 P.2d 1151, 1153 (1988); *State v. Dopp,* 124 Idaho 512, 516, 861 P.2d 82, 86 (Ct.App.1992). This distinction in the standards is utilized to avoid encouraging defendants to plead guilty in order to test the potential punishment and then withdraw the plea if the sentence is unexpectedly severe. *State v. McFarland,* 130 Idaho 358, 361, 941 P.2d 330, 333 (Ct.App.1997); *State v. Freeman,* 110 Idaho 117, 121, 714 P.2d 86, 90 (Ct.App.1986). Even when the motion is presented before sentencing, if it occurs after the defendant has learned the content of the presentence report or has received other information about the probable sentence, the court may temper its liberality by weighing the defendant's apparent motive. *State v. Johnson,* 120 Idaho 408, 411, 816 P.2d 364, 367 (Ct.App.1991); *State v. Hocker,* 115 Idaho 137, 139, 765 P.2d 162, 164 (Ct.App.1988). A defendant's failure to present and support a plausible reason will dictate against granting withdrawal, even absent prejudice to the prosecution. *Dopp,* 124 Idaho at 516, 861 P.2d at 86; *State v. Rodriguez,* 118 Idaho 957, 959, 801 P.2d 1308, 1310 (Ct.App.1990).

In order to be valid, a guilty plea must be voluntary, and voluntariness requires that the defendant understand the nature of the charges to which he is pleading guilty. *Boykin v. Alabama,* 395 U.S. 238, 242, 89 S.Ct. 1709, 23 L.Ed.2d 274 (1969); *State v. Dopp,* 124 Idaho 481, 484, 861 P.2d 51, 54 (1993); *State v. Mauro,* 121 Idaho 178,

180, 824 P.2d 109, 111 (1991); *State v. Carrasco,* 117 Idaho 295, 298, 787 P.2d 281, 284 (1990). Mayer contends that the United States Supreme Court decision in *Henderson v. Morgan,* 426 U.S. 637, 96 S.Ct. 2253, 49 L.Ed.2d 108 (1976), supports his contention that his plea must be deemed involuntary because the penetration element of rape was not explained to him. In *Morgan,* the Supreme Court held a mentally retarded defendant's guilty plea to second degree murder was invalid because the defendant entered the plea without having been informed or having understood that an intent to cause the victim's death was an element of the offense. The Court deemed the plea involuntary because the defendant did not receive adequate notice of the offense to which he pleaded guilty. *Morgan,* 426 U.S. at 647, 96 S.Ct. 2253. *Morgan* does not require, however, that an explanation of every element of the offense must always be given to the defendant on the record before a valid guilty plea may be taken. Indeed, the *Morgan* opinion included a cautionary footnote that stated:

> There is no need in this case to decide whether notice of the true nature, or substance, of a charge always requires a description of every element of the offense; *we assume it does not.* Nevertheless, intent is such a critical element of the offense of second-degree murder that notice of that element is required.

*Morgan,* 426 U.S. at 647 n. 18, 96 S.Ct. 2253 n. 18 (emphasis added).

An adequate understanding of the offense to permit a valid guilty plea may be gained by a defendant in ways other than an explication from the court. One factor to be considered is whether the charge or a pleaded element of the charge is "a self-explanatory legal term or so simple in meaning that it can be expected or assumed that a lay person understands it." WAYNE R. LAFAVE ET AL., CRIMINAL PROCEDURE § 21.4(c) (2d ed.1999). *See also United States v. Wetterlin,* 583 F.2d 346, 350 (7th Cir.1978) (stating that charge of "conspiracy" is not a self-explanatory legal term so simple in meaning that it can be expected or assumed that a lay person understands it); *Easter v. Norris,* 100 F.3d 523, 526 (8th Cir.1996) (holding that terms "en-

ter" and "intent" in context of burglary did not require further explanation at taking of guilty plea); *Waits v. People,* 724 P.2d 1329, 1334–35 (Colo.1986) (holding that district court was, not required to define terms "intent," "specific intent," and "theft" for crime of burglary). In this case, the words used in the information and by the court were sufficient to inform a person of common understanding that an intent to sexually penetrate was being alleged. In its common, everyday usage, the word "rape" means sexual penetration under circumstances in which the victim does not consent. *See* WEBSTER'S THIRD NEW INTERNATIONAL DICTIONARY 1882 (1993) (defining rape in the sexual sense as "illicit sexual intercourse without the consent of the woman and effected by force, duress, intimidation, or deception as to the nature of the act"). Thus, with respect to the element of penetration, the layperson's meaning of "rape" corresponds with the legal definition set out in I.C. § 18–6101. Mayer does not contend that he does not understand English well, is mentally disabled, or for any other reason does not have at least an ordinary layperson's understanding of the word "rape." Therefore, when the district court referred to the charge as battery with intent to commit rape, the court sufficiently conveyed that the charge alleged an intent to sexually penetrate the victim. In asserting that he did not admit an intent to penetrate, Mayer offers no explanation of what he thought he was admitting when he acknowledged an intent to rape the victim. Mayer's contention that he did not understand this component of the charged offense so lacks credibility and plausibility that the district court was justified in rejecting it.

The self-explanatory nature of "rape" as encompassing sexual penetration distinguishes this case from *Morgan,* where the defendant pleaded guilty to second degree murder without having been informed that intent to kill the victim was an element of the charge. Although a layperson of normal intelligence would understand that murder means to kill another human without justification, he would not necessarily also understand that, in addition to the commission of the act which causes death, murder also requires the preexisting intent to kill.

The two other cases upon which Mayer relies, *Noel v. State,* 113 Idaho 92, 741 P.2d 728 (Ct.App.1987), and *State v. Henderson,* 113 Idaho 411, 744 P.2d 795 (Ct.App.1987), are likewise distinguishable. In *Noel,* the defendant pleaded guilty to assault with intent to commit murder after having shot his victim in the nose. Later, in a post-conviction action, he alleged that he had not understood that intent to kill was an element of the offense. When taking Noel's guilty plea, the court had asked whether Noel admitted shooting the victim, but the court did not inquire whether Noel had intended to murder the victim and did not explain that intent to kill, or malice aforethought, was an element that Noel was admitting with his guilty plea. In reversing the district court's summary dismissal of Noel's post-conviction action, this Court held that Noel had made a prima facie showing, sufficient to entitle him to an evidentiary hearing, on his claim that he did not understand the nature of the charge when he pleaded guilty. In *Noel,* the trial court asked the defendant to admit only the actus reus of the offense—shooting the victim; the court did not mention at all the special intent element of intent to commit murder. *Noel* would be analogous to the present case if the district court had asked Mayer only whether he battered the victim and had not asked about intent to rape. Unlike *Noel,* Mayer was notified of the mental element—intent to rape—and claims only that he did not understand its meaning, a claim that we have already rejected as implausible and disingenuous.

*Henderson* is likewise readily differentiated from Mayer's circumstance. In *Henderson,* the defendant was charged with grand theft following his attempt to purchase $500,000 worth of silver with forged cashier's checks. The information did not allege that Henderson had an intent to deprive another of property, an intent to defraud, or knowledge that the cashier's checks were forged. At his plea hearing, the court did not advise Henderson of these mental elements of the offense. This Court held that the district court abused its discretion when it denied Henderson's subsequent motion to withdraw his guilty plea on the ground that he had not

been informed of the intent element of the crime. *Henderson,* 113 Idaho at 414, 744 P.2d at 798. Unlike Henderson, who was never advised of the mental elements of the charged offense, Mayer was specifically informed of the requisite intent element, the intent to commit rape.

The record here supports the district court's finding that Mayer was informed of and understood the nature of the charge when he pleaded guilty.

### 2. Ineffective assistance of counsel

■ In moving to withdraw his guilty plea, Mayer also asserted that the plea resulted from ineffective assistance of counsel because his attorney had not informed him of exculpatory evidence and certain inconsistencies in statements that had been made by the victim concerning the attack.

A defendant seeking relief for ineffective assistance of counsel must show both that the attorney's representation was deficient and that the defendant was prejudiced thereby. *Strickland v. Washington,* 466 U.S. 668, 687, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984). This requires a showing that the defense attorney made errors so serious that the attorney was not functioning as the "counsel" guaranteed to the defendant by the Sixth Amendment. *Id.* To satisfy the prejudice prong, the defendant must demonstrate that, but for counsel's errors, the result of the proceeding would have been different. *Id.* at 694, 104 S.Ct. 2052; *Aragon v. State,* 114 Idaho 758, 761, 760 P.2d 1174, 1177 (1988). When it is asserted that a guilty plea was the product of ineffective assistance, to prove the prejudice prong the defendant "must show that there is a reasonable probability that, but for counsel's errors, he would not have pleaded guilty and would have insisted on going to trial." *Hill v. Lockhart,* 474 U.S. 52, 59, 106 S.Ct. 366, 88 L.Ed.2d 203 (1985). *See also Gilpin–Grubb v. State,* 138 Idaho 76, 82, 57 P.3d 787, 793 (2002); *Menchaca v. State,* 128 Idaho 649, 652, 917 P.2d 806, 809 (Ct.App.1996).

The evidence that Mayer claims was exculpatory and was not disclosed to him by his attorney included the results of a rape kit examination of the victim and tests of her clothing, which were negative for the pres-

ence of semen. Mayer's contention that this evidence was exculpatory is without merit. Because Mayer was not charged with a completed rape but only with assault with intent to commit rape, the absence of semen on the victim's body or clothing is of no consequence and carries no exculpatory value. There would have been no reason for defense counsel to focus on this evidence, and Mayer could not have been prejudiced by his asserted unawareness of its existence.

■ Mayer also claims that counsel was deficient in failing to discuss with Mayer a comment in a police report concerning a conversation between an officer and a deputy prosecutor during the course of the investigation. According to the report, the deputy prosecutor said, "He felt as though there was not enough evidence to prove rape or battery with intent to commit a felony." Again, we find no merit in Mayer's attachment of importance to this information that allegedly was not disclosed to him. The fact that a deputy prosecutor may have made such a statement at some preliminary point in the investigation would ultimately have been of little or no value to Mayer's defense if he had gone to trial. It is not clear what evidence was known to the deputy prosecutor when that statement was made, but it is clear that the evidence of Mayer's guilt of the charged offense that had been amassed by the time of his guilty plea was overwhelming. The victim reported that she awoke to find Mayer on top of her with her pants partially removed, with Mayer touching her in the vaginal area, and with Mayer naked from the waist down. She said that as she was trying to wake her husband, Mayer rolled under the bed. Her story was substantiated by her husband's report that when he awoke a short while later, Mayer was hiding under the couple's bed, clad in his underwear. The victim's allegations were also confirmed by Mayer's own admissions; in a police interview he admitted that he had been in the victim's bedroom, pulled down her pants and underwear, and placed his hand in her genital area, and that his own pants were unfastened at the time.

Finally, Mayer contends that his attorney should have informed Mayer of "inconsistencies" in two written statements given to the police by the victim, describing what she felt concerning the possibility that there had been penetration. We have reviewed the statements and, although they contain slight differences, we do not find any substantial inconsistency. Further, attacking the victim's credibility would hardly have been a viable defense strategy in view of the fact that Mayer had admitted to nearly the same acts described by the victim, which gave rise to a strong inference that his intent was to commit rape.

In sum, even assuming the truth of Mayer's allegations concerning his lawyer's omission to convey to him information from the police file, there is no demonstration of deficiency in the attorney's representation or of any prejudice to Mayer in his ability to make an informed decision whether to plead guilty.

## IV.

## CONCLUSION

The information charging Mayer with battery with intent to commit rape was not jurisdictionally defective, and Mayer has shown no abuse of the trial court's discretion in the denial of his motion to withdraw his guilty plea. Therefore, the district court's orders denying the motion to dismiss and the motion for withdrawal of the guilty plea are affirmed.

Judge PERRY and Judge GUTIERREZ concur.