114 P.3d 142

**STATE of Idaho, Plaintiff–Respondent,**

v.

**Arvind NATH, Defendant–Appellant.**

**No. 30002.**

Court of Appeals of Idaho.

March 3, 2005.

Review Denied June 20, 2005.

Molly J. Huskey, State Appellate Public Defender; Eric Don Fredericksen, Deputy

Appellate Public Defender, Boise, for appellant.

Hon. Lawrence G. Wasden, Attorney General; Carol L. Chaffee, Deputy Attorney General, Boise, for respondent.

LANSING, Judge.

Arvind Nath appeals the district court's order denying Nath's motion to withdraw his guilty plea to attempted custody interference. Nath contends that his guilty plea was invalid because he was coerced into pleading guilty in light of the circumstances he was facing at the time he entered his plea. We affirm.

## I.

### FACTUAL & PROCEDURAL BACKGROUND

Nath and his wife, Paige, have a daughter who was born in 1987. Paige's relatives, the Yosts, cared for the child almost from her birth. In 1995, the Yosts obtained legal custody of the child and moved to Boise. In 1996, Nath was charged with second degree kidnapping after he took his daughter from a Boise yard where she was playing, put her in his van and tried to drive away with her. In 1997, a jury convicted Nath of the lesser included offense of attempted kidnapping. Nath absconded and did not appear for sentencing. He was later arrested in June 2000, and returned to Idaho. The district court imposed a unified ten-year sentence with one year determinate. Nath appealed the conviction, and the Idaho Supreme Court vacated the judgment of conviction and remanded for a new trial, holding, among other things, that the trial court committed reversible error when it took from the jury the question whether the Yosts had lawful custody of the child. See State v. Nath, 137 Idaho 712, 716–17, 52 P.3d 857, 861–62 (2002).

After remand, the State charged Nath by amended information with attempted second degree kidnapping. After Nath's private counsel withdrew, Nath filed several pro se motions, including one for appointment of counsel, but failed to appear for scheduled hearings on the motions. Due to these failures to appear, at an August 11, 2003 pretrial conference the court had Nath taken into custody and set his bond at $100,000 in order to ensure Nath's appearance at his scheduled trial.

On September 9, 2003, the parties presented the court with a stipulation for a plea agreement and an amended information charging Nath with felony attempted child custody interference. Under the agreement, Nath would receive a withheld judgment, would receive no additional jail time, and would not be ordered to pay any fine or restitution. Nath would be on unsupervised probation until October 3, 2005 (his daughter's eighteenth birthday) and could serve his probationary period in Ohio, where he lived, but if he violated probation he would not be given credit for any jail time previously served. The agreement provided that Nath would be prohibited from contacting the Yosts at all or contacting his daughter unless she initiated contact. The district court accepted Nath's plea and followed the plea agreement.

On September 15, 2003, Nath faxed from Ohio a motion to withdraw his guilty plea on the ground that is was not entered knowingly, intelligently, and voluntarily. Nath claimed that he was not informed of the full consequences of the plea and that it was made in a "coercive atmosphere." Nath failed to appear for the first four hearings on the motion scheduled by the district court. At the fifth hearing date on December 15, 2003, Nath appeared, but because he presented two additional pro se motions to be considered with the motion to withdraw his guilty plea, the court needed additional time to consider the new motions, and the court had Nath taken into custody on a $100,000 bond to ensure his appearance at the December 23, 2003 hearing. At the hearing, Nath testified that at the time of the plea, he was worried about his wife's mental condition and his mother's extremely high blood pressure. Defense counsel also argued that at the time of the plea Nath had felt threatened and intimidated by the court due to "treatment he had received in past court appearances." The district court denied Nath's motion to withdraw his plea, concluding that it was

made knowingly, intelligently, and voluntarily.

Nath appeals, contending that the district court erred in denying his motion to withdraw his guilty plea because the plea was coerced and therefore involuntary.

## II.

### ANALYSIS

■ A motion to withdraw a guilty plea is governed by Idaho Criminal Rule 33(c), which allows the withdrawal of a guilty plea after sentencing "to correct manifest injustice." The burden is on the defendant to show that a manifest injustice would result if the motion to withdraw the guilty plea were denied. *State v. Gomez*, 124 Idaho 177, 178, 857 P.2d 656, 657 (Ct.App.1993). Whether to grant a motion to withdraw a guilty plea lies in the discretion of the district court. *State v. Moon*, 140 Idaho 609, 610, 97 P.3d 476, 477 (Ct.App.2004); *State v. Freeman*, 110 Idaho 117, 121, 714 P.2d 86, 90 (Ct.App.1986). Appellate review is limited to determining whether the trial court abused its sound discretion. *Moon*, 140 Idaho at 610, 97 P.3d at 477; *State v. Lavy*, 121 Idaho 842, 844, 828 P.2d 871, 873 (1992).

■ Nath contends that his guilty plea was coerced and therefore was not taken in compliance with constitutional due process standards, which require that a guilty plea be entered voluntarily, knowingly, and intelligently. *See State v. Huffman*, 137 Idaho 886, 887, 55 P.3d 879, 880 (Ct.App.2002). In support of his contention that the plea was coerced, Nath cites the fact that, prior to the guilty plea, he was taken into custody on a $100,000 bond after traveling to Idaho for his trial. He testified at the hearing on his motion to withdraw the plea that his wife's mental condition was deteriorating significantly during the time he was incarcerated awaiting his trial, that she was sleeping on the streets, that Nath was her sole caregiver, and that there was nothing he could do to help her as he was only able to contact her during jail visits and on the phone. He testified that his mother's health was bad at the time as well. None of these facts were mentioned to the district court at the time that Nath pleaded guilty.

Nath argues by implication that he was coerced because pleading guilty was the only way for him to be released in order to tend to his wife and mother. A similar argument was addressed by this Court in *Mata v. State*, 124 Idaho 588, 861 P.2d 1253 (Ct.App. 1993), where the defendant claimed that his guilty plea was involuntary because it was prompted by "extreme pressure." Such pressure, he alleged, arose from his concern that his children were in foster care in Nebraska, and that he felt compelled to plead guilty in exchange for the release of his wife so that she would be able to retrieve the children. We held that because the pressures were not attributable to the State, and because Mata conceded at sentencing that the prosecution had probable cause to charge his wife, the anxiety and pressure generated by his family situation did not constitute impermissible coercion rendering his guilty plea involuntary. Significantly, we cited with approval the following passage from *Politte v. United States*, 852 F.2d 924, 930 (7th Cir.1988), a case in which a defendant pleaded guilty in exchange for the prosecutor's promise to recommend a lenient sentence for Politte's co-conspirator wife:

It is likely that William Politte's personal motives for pleading guilty were influenced by his sense of concern for his wife. The worry about his wife's fate may have increased the anxiety that he felt anticipating sentencing-however, that does not equate with duress in the constitutionally impermissible sense nor does it render his subsequent plea involuntary.

*Mata*, 124 Idaho at 594, 861 P.2d at 1259. Because Nath's personal family circumstances were not attributable to the State, they likewise do not render his plea invalid or coerced.

■ Nath next asserts that his "strained relationship with the district court" contributed to his guilty plea. In support, Nath points out that the district court had previously denied requests for appointed counsel, placed a $100,000 bond upon Nath, and made harsh comments to Nath at various points in the proceedings. Whatever "strained rela-

tionship" may have existed with the district court, we fail to see how this would have coerced Nath into pleading guilty. We note that the district court went to great lengths to ensure that Nath's decision was voluntary. The following colloquy occurred during the district court's lengthy examination of Nath on the date of his plea:

> THE COURT: Mr. Nath, I want you first of all to understand, sir, that I don't care whether you plead guilty or not. It's totally up to you. You're not going to please me or displease me. I'm here to provide trials. You're the only trial laid on for next week. I'm going to be fully prepared to hear your trial if this doesn't work, so you're not making me happy or unhappy going forward. It has to be totally your decision. Do you understand? Do you understand that?
>
> NATH: Yes.
>
> . . . .
>
> THE COURT: And you're confident that you have freely and voluntarily chosen to enter this plea; is that correct?
>
> NATH: Yes.
>
> . . . .
>
> THE COURT: Mr. Nath, it's all coming down to you, sir. It's not too late as you sit there right now, even after all these questions, for you to enter—for you to change your mind about entering a plea of guilty. Do you understand what I'm saying?
>
> NATH: Yes.
>
> THE COURT: Not too late, even now, to change your mind. If we go forward just a couple more seconds here, couple moments and then by then I've accepted your plea because you've insisted that I do so, after that point in time, sir, it would be too late for you to want to change your mind and take your plea back. Do you understand that, sir?
>
> NATH: Yes.
>
> THE COURT: So knowing, Mr. Nath, as you sit there right now, sir, that you still could change your mind, what would you have me do, sir?
>
> NATH: Go forward.
>
> THE COURT: Go forward means?

> NATH: With the plea.

The record does not support Nath's claim that an allegedly strained relationship with the court affected the voluntariness of his plea.

Because Nath has not shown that his guilty plea was involuntary, or that manifest injustice would result if he were not allowed to withdraw his plea, we find no error in the district court's denial of Nath's motion. The district court's order denying Nath's motion to withdraw his guilty plea is affirmed.

Chief Judge PERRY and Judge GUTIERREZ concur.