IN THE COURT OF APPEALS OF THE STATE OF IDAHO
Docket No. 37866

| STATE OF IDAHO, | ) | 2011 Unpublished Opinion No. 727 |
| | ) | |
| Plaintiff-Respondent, | ) | Filed: December 1, 2011 |
| | ) | |
| v. | ) | Stephen W. Kenyon, Clerk |
| | ) | |
| STEVEN G. FAITH, | ) | THIS IS AN UNPUBLISHED |
| | ) | OPINION AND SHALL NOT |
| Defendant-Appellant. | ) | BE CITED AS AUTHORITY |
| | ) | |

Appeal from the District Court of the First Judicial District, State of Idaho, Shoshone County. Hon. Fred M. Gibler, District Judge.

Judgment of conviction for possession of a controlled substance and being a persistent violator, affirmed.

Molly J. Huskey, State Appellate Public Defender; Diane M. Walker, Deputy Appellate Public Defender, Boise, for appellant.

Hon. Lawrence G. Wasden, Attorney General; Nicole L. Schafer, Deputy Attorney General, Boise, for respondent.
_____

GUTIERREZ, Judge

Steven G. Faith appeals from his judgment of conviction for possession of methamphetamine and being a persistent violator, contending the district court erred in denying his motion to withdraw his guilty plea to the charges. We affirm.

## I.

## FACTS AND PROCEDURE

Stemming from an incident in December 2009, Faith was charged in Shoshone County with possession of methamphetamine, destruction of evidence, misdemeanor resisting arrest, driving without privileges, and being a persistent violator. In April 2010, Faith's elderly mother had a heart attack, and Faith motioned to be released because his mother was "dying." At the April 22 hearing on the motion, held in conjunction with the change of plea hearing, both Faith and another witness testified as to Faith's mother's health problems and Faith discussed his desire to be released and tend to his mother. Also discussed at the hearing was Faith's extensive

1

criminal record and an incident where he physically resisted law enforcement officers. Faith's probation officer testified the Department of Correction opposed releasing Faith due to its belief that he was a "serious flight risk" and at high risk to reoffend. Because a probation violation was also pending against Faith in Kootenai County, a Kootenai County prosecutor was present at the hearing and expressed his opposition to Faith being released due to Faith's criminal history and public safety concerns.

The Shoshone County prosecutor and defense counsel indicated they contemplated a plea agreement wherein Faith would plead guilty to the possession of methamphetamine charge, be released on his own recognizance pending sentencing in order to care for his mother, and the remaining charges would be dismissed at sentencing if he complied with the conditions of his release. After the district court noted the conflict between the two counties, the following exchange occurred:

| [The Court]: | One thing I was curious about was what the actual plea was going to be. [Defense counsel] had made the statement that he has the other charges hanging over his head if he violates the terms of his release. Well, now, that's really not correct because there would be no plea to the other charges. |
| | It seems to me that there is a basis for a release here, but I would like to see it in such--in a case where he does have more than just-- |
| [Defense counsel]: | Judge, Mr. Faith is willing to plead to all the charges. |
| [The Court]: | I wasn't going to suggest that. I was just going to suggest to Count I, Part 2, the habitual offender. |
| [Defense counsel]: | He is willing to do that-- |
| [The Court]: | All right. |
| [Defense counsel:] | --under the condition that it would be dismissed at sentencing. |
| [The Court]: | Dismissed if he complies with all conditions of release. All right. In that event, then-- |
| [Defendant:] | So long as I do good when I come in and drop those off there? |
| [The Court]: | If you don't violate the conditions of release. |

There was then a break in the proceedings, after which the parties presented the court with a written plea agreement, signed by Faith, wherein he agreed to plead guilty to the possession charge and to being a persistent violator in exchange for (1) a certain sentencing recommendation from the State, (2) release on his own recognizance prior to sentencing, and (3) dismissal of the remaining counts and the persistent violator charge at sentencing if he fully

2

complied with the conditions of his release. If there was a violation of the terms of the release, the guilty plea as to both the possession charge and the persistent violator charge would remain and he would be sentenced on those convictions.

At this time, the court was informed that the probation office could not monitor Faith with an electronic ankle bracelet, as previously stated, due to budget cuts. The court indicated that while it wished it had the "additional safeguard" of a monitoring bracelet, it would still release Faith because it was confident he would comply with the terms of his release given that he was facing life imprisonment if he did not. Faith confirmed his understanding of the agreement as written, and the court again reiterated the consequences if Faith were to violate the condition of his release pending sentencing:

| [The Court]: | You understand what I'm saying here about [the persistent violator charge]. If you violate the terms of your release, you'll be back in here, and you can go to prison for life. Do you understand that? |
| --- | --- |
| [Defendant]: | Yes, sir. |
| [The Court]: | And you also understand that, if you do violate those conditions, I would not hesitate to do that. |
| [Defendant]: | I would. |

Faith was released, but the very next day was placed back into custody for violating a term of his release after he tested positive for methamphetamine. On June 3, a week prior to his scheduled sentencing date, Faith filed a motion to withdraw his guilty plea to the persistent violator charge. Following a hearing, the district court denied the motion and proceeded to sentencing, imposing a unified sentence of fifteen years, with three years determinate. Faith appeals.

## II.

## ANALYSIS

Faith contends the district court abused its discretion in denying his pre-sentence motion to withdraw his guilty plea. Specifically, he asserts that he established a just reason for withdrawal of the plea because he was "coerced" by the district court to plead guilty to being a persistent violator.

Whether to grant a motion to withdraw a guilty plea lies in the discretion of the district court and such discretion should be liberally applied. *State v. Freeman*, 110 Idaho 117, 121, 714

3

P.2d 86, 90 (Ct. App. 1986). Appellate review of the denial of a motion to withdraw a plea is limited to determining whether the district court exercised sound judicial discretion as distinguished from arbitrary action. *Id.* When a trial court's discretionary decision is reviewed on appeal, the appellate court conducts a multi-tiered inquiry to determine: (1) whether the lower court correctly perceived the issue as one of discretion; (2) whether the lower court acted within the boundaries of such discretion and consistently with any legal standards applicable to the specific choices before it; and (3) whether the lower court reached its decision by an exercise of reason. *State v. Hedger*, 115 Idaho 598, 600, 768 P.2d 1331, 1333 (1989).

To withdraw a guilty plea prior to sentencing, the defendant must show a just reason for withdrawing the plea. Idaho Criminal Rule 33(c); *State v. Flowers*, 150 Idaho 568, 571, 249 P.3d 367, 370 (2011). If he does so, the State may avoid the granting of the motion by showing prejudice would result if the plea were withdrawn. *Id.* The defendant's failure to present and support a plausible reason will dictate against granting withdrawal, even absent prejudice to the prosecution. *State v. Dopp*, 124 Idaho 481, 485, 861 P.2d 51, 55 (1993). Even when the motion is presented before sentencing, if it occurs after the defendant has learned of the content of the presentence investigation report or has received other information about the probable sentence, the district court may temper its liberality by weighing the defendant's apparent motive. *State v. Arthur*, 145 Idaho 219, 222, 177 P.3d 966, 969 (2008); *State v. Mayer*, 139 Idaho 643, 647, 84 P.3d 579, 583 (Ct. App. 2004). The good faith, credibility, and weight of the defendant's assertions in support of his motion to withdraw his plea are matters for the trial court to decide. *State v. Hanslovan*, 147 Idaho 530, 537, 211 P.3d 775, 782 (Ct. App. 2008).

Faith contends the district court coerced him into pleading guilty to being a persistent violator to secure release pending sentencing, making him feel "as if he had no other choice than to accept the district court's negotiated terms, even though, [sic] the State did not require the additional plea from him."[1] More specifically, he characterizes the district court's role in the

---

[1] Typically, the first step in analyzing a motion to withdraw a guilty plea is to determine whether the plea was knowingly, intelligently, and voluntarily made. *State v. Hanslovan*, 147 Idaho 530, 536, 211 P.3d 775, 781 (Ct. App. 2008). Only if the plea is constitutionally valid must the court then determine whether there are any other just reasons for withdrawal of the plea. *Id.* In this case, however, Faith does not contend the alleged "coercion" in this case rose to the level of rendering his plea constitutionally infirm. Thus, we limit our analysis to whether it constituted a "just reason" for withdrawal of the plea.

change of plea hearing as becoming "involved in the negotiations and [telling] Mr. Faith that it might be willing to release him but wanted to see a different plea negotiation." He bases this argument on his assertion that, at the commencement of the change of plea hearing, the State was apparently willing to accept only a guilty plea to the possession of methamphetamine charge, but he was "forced" to also plead guilty to the persistent violator charge when the district court suggested Faith also plead guilty to being a persistent violator in order to have that sentencing enhancement "hanging over his head" were he to violate the terms of his release.

In denying Faith's motion to withdraw his guilty plea, the court stated:

[T]he idea that he was coerced into the plea is so far afield from the facts that, again, it--I'm not blaming you [defense counsel]. I know that's your client's position. But given the discussion I had with him at the time as to what the consequences would be of violating the terms of his release, and then he went ahead and entered the plea--I don't see how there could be any claim of coercion.

The coercion, if there was any, would have come from Mr. Faith. I mean, he was the one in here asking me to release him. He said, "Please release me." And I said, "Okay. Here are the conditions." That was not coercion by me or by the State or by anyone else. That was a condition of his release.

The court continued:

The fact here is that the motion . . . is a discretionary call with me. The motion is being made before sentencing. However, it is being made after Mr. Faith has received information about the probable sentence, to wit . . . he knows, based upon his violation of the terms of release, that he could be facing up to life in prison for this offense. Therefore, the motive, I think, is quite apparent in his request. And that is a motive to simply avoid the consequences of his plea.

Faith's contention that the district court somehow "coerced" him into pleading guilty to being a persistent violator is not well taken. To the contrary, Faith, who had an extensive and serious criminal history, had recently violated his probation in Kootenai County and was facing several serious charges in this case. He was requesting leniency from the district court in releasing him pending sentencing in order to care for his ill mother. Both the Department of Correction and Kootenai County prosecutor vigorously opposed the release, listing concerns about public safety, officer safety, and their perception that Faith was a high risk to abscond given his previous history. In light of this opposition and Faith's history, it is not unreasonable that the district court expressed some trepidation about releasing Faith without more serious consequences "hanging over his head" in the form of a guilty plea to the persistent violator

5

charge. In addition, the record clearly indicates the district court was far from forceful during this exchange; the court had barely begun discussing the possibility of a guilty plea to the persistent violator charge as a requirement for release when defense counsel jumped in and expressed Faith's willingness to plead guilty to *all* of the pending charges in exchange for presentence release, a requirement the court indicated was not necessary.[2]

In addition, the record is clear that the district court reiterated the consequences of pleading guilty to being a persistent violator numerous times and Faith repeatedly indicated his understanding of the terms. At no point did Faith express anything other than a complete willingness to accept the plea agreement as written.

Finally, as the district court pointed out, the circumstances surrounding Faith's motion to withdraw his plea make it quite apparent that Faith's motivation was the fact that he was now facing a possible life sentence after violating the conditions of his release only *one day* after being released. Where Faith had clear information as to the sentence that could be imposed (as the district court had repeatedly warned him that a life sentence was a possibility at the time he entered his guilty plea), it was certainly appropriate for the district court to temper its liberality in applying the just reason standard. *Arthur*, 145 Idaho at 222, 177 P.3d at 969. Based on the record on appeal, we cannot say the district court abused its discretion in concluding there was no just reason for withdrawal of his plea and in denying the motion. Faith's judgment of conviction for possession of a controlled substance and being a persistent violator is affirmed.

Judge LANSING and Judge MELANSON **CONCUR.**

---

[2] To the extent Faith is arguing that he was coerced into entering a guilty plea because it was the only way for him to be released in order to take care of his mother, a similar argument was rejected in *State v. Nath*, 141 Idaho 584, 114 P.3d 142 (Ct. App. 2005). There, we held that Nath's argument that he was coerced into pleading guilty because it was the only way for him to be released to care for his mother and wife did not render his plea involuntary, because the pressure stemmed from family circumstances and not from State action. *Id*. at 586, 114 P.3d at 144.