**IN THE COURT OF APPEALS OF THE STATE OF IDAHO**

**Docket No. 39209**

| | | |
|---|---|---|
| STATE OF IDAHO, | ) | 2012 Unpublished Opinion No. 726 |
| | ) | |
| Plaintiff-Respondent, | ) | Filed: November 20, 2012 |
| | ) | |
| v. | ) | Stephen W. Kenyon, Clerk |
| | ) | |
| PATTY ANN MAXIM, | ) | THIS IS AN UNPUBLISHED |
| | ) | OPINION AND SHALL NOT |
| Defendant-Appellant. | ) | BE CITED AS AUTHORITY |
| | ) | |

Appeal from the District Court of the Fifth Judicial District, State of Idaho, Jerome County. Hon. John K. Butler, District Judge.

Order denying motion to withdraw guilty plea, <u>affirmed</u>.

Brady Law, Chtd.; Eric D. Fredericksen, Boise, for appellant.

Hon. Lawrence G. Wasden, Attorney General; Jessica M. Lorello, Deputy Attorney General, Boise, for respondent.

_____

PERRY, Judge

Patty Ann Maxim appeals from her judgment of conviction for possession of a controlled substance. Specifically, she asserts the district court erred by denying her motion to withdraw her guilty plea. We affirm.

Pursuant to plea negotiations, Maxim entered an *Alford* plea[1] to possession of methamphetamine. As a part of these negotiations, the state recommended mental health court. At the change of plea hearing, the court inquired whether there was anything going on in Maxim's life that would affect her "ability to make a reasoned or informed decision" regarding the guilty plea. Maxim affirmatively responded and the following colloquy ensued:

> THE COURT: What is going on?
> THE DEFENDANT: My children are being held from me contingent on mental health court. The guardian ad litem came to my house for the first time

_____

[1]  *North Carolina v. Alford*, 400 U.S. 25 (1970).

1

last Thursday and told me that she--she told my son the reason he can't come home is because I needed to do mental health court.

THE COURT: Okay. Anything else?

THE DEFENDANT: And my house is getting ready to go into foreclosure because of this situation.

THE COURT: But I guess the real purpose of my question is whether or not those issues that are going on in their life--in your life, does that prevent you from understanding what it is we're doing here today?

THE DEFENDANT: No, sir.

THE COURT: So are you still able, on your own part, to make decisions that are in your best interest to be made?

THE DEFENDANT: Yes, sir.

The court proceeded to inform Maxim of the rights she was waiving by pleading guilty before returning to the voluntariness issue. The court and Maxim then engaged in the following discussion:

THE COURT: And did somebody tell you you had to take this agreement?

THE DEFENDANT: Except for health and welfare telling me I have to have mental health court to have my kids back, no.

THE COURT: So if mental health court--if health and welfare had not spoken to you, would you be going to trial?

THE DEFENDANT: I don't know that answer for sure right now, sir.

THE COURT: Well, what I'm trying to understand is, because I have to make sure that your decision to accept this agreement is your decision and your decision alone.

THE DEFENDANT: It is my decision.

THE COURT: And that I don't want to know--or I do want to know if someone is forcing you to do this beyond your own desires?

THE DEFENDANT: My desire is to have my kids back.

After a brief discussion between Maxim and her counsel, the court returned to this inquiry:

THE COURT: Okay. Again, my last question to you is as to whether somebody has told you that you have to accept this agreement?

THE DEFENDANT: Not that I have to, no.

THE COURT: But health and welfare has indicated to you that mental health court would be a condition of return of your children?

THE DEFENDANT: Yes, sir.

THE COURT: And is that a factor that you were taking into account in deciding whether or not to accept this agreement?

THE DEFENDANT: Yes, sir.

THE COURT: The question for me, though, is it still your decision and your decision alone?

THE DEFENDANT: Yes, sir.

THE COURT: And is there any other outside influences that are causing you to take this agreement?

THE DEFENDANT: No, sir.

THE COURT: And the question then, again, that I have for you is if health and welfare were not involved in this case, or not in this case, but if health and welfare were not involved in your life and the life of your children, would you be taking this deal?

(Discussion off the record between counsel and defendant.)

THE DEFENDANT: Sir, from my understanding, because I do own that home and because this was supposedly found in my home, no matter fingerprints or otherwise, then I'm guilty no matter what. Did I know what was it? No. But from what I understand, it was found in my--this empty needle was found in my home and I'm--

THE COURT: Okay. That kind of goes beyond the question I'm asking right now. What I'm asking is, is that would you not be--Well, the fact that health and welfare are involved in your life and your children's lives, in part, arises out of this case, correct?

THE DEFENDANT: It completely arises out of this.

The court ultimately accepted Maxim's guilty plea. Approximately two months later, at her sentencing hearing, Maxim informed the court she was moving to withdraw her guilty plea because she felt she was coerced to enter it by the Department of Health and Welfare. The district court continued Maxim's sentencing hearing to allow her to pursue her motion. Four days later, Maxim filed a written motion to withdraw her guilty plea stating that at the time of her plea entry she believed "that she would not be able to complete her case plan and have her children returned to her care if she did not enter a guilty plea to the felony charge in this case."

The court subsequently conducted a hearing on Maxim's motion to withdraw her guilty plea. After taking the matter under advisement, the court denied Maxim's request to withdraw her guilty plea and sentenced her to five years of probation. She appeals from the district court's judgment of conviction and sentence.

Whether to grant a motion to withdraw a guilty plea lies in the discretion of the district court and such discretion should be liberally applied. *State v. Freeman*, 110 Idaho 117, 121, 714 P.2d 86, 90 (Ct. App. 1986). Appellate review of the denial of a motion to withdraw a plea is limited to determining whether the district court exercised sound judicial discretion as distinguished from arbitrary action. *Id.* Also of importance is whether the motion to withdraw a plea is made before or after a sentence is imposed. Idaho Criminal Rule 33(c) provides that a

3

plea may be withdrawn after sentencing only to correct manifest injustice. The stricter standard after sentencing is justified to ensure that the accused is not encouraged to plead guilty to test the weight of the potential punishment and withdraw the plea if the sentence were unexpectedly severe. *Freeman*, 110 Idaho at 121, 714 P.2d at 90. Accordingly, in cases involving a motion to withdraw a plea after sentencing, appellate review is limited to reviewing the record and determining whether the trial court abused its sound discretion in determining that no manifest injustice would occur if the defendant was prohibited from withdrawing his or her plea. *State v. Lavy*, 121 Idaho 842, 844, 828 P.2d 871, 873 (1992). Thus, although the court should liberally exercise its discretion to identify a just reason when presented, the court need not be so liberal when the defendant has learned the content of the presentence investigation report or has received other information about the probable sentence. *State v. Arthur*, 145 Idaho 219, 222, 177 P.3d 966, 969 (2008). A motion to withdraw may be denied if the defendant fails to present and support a plausible reason for granting the withdrawal. *State v. Akin*, 139 Idaho 160, 162, 75 P.3d 214, 216 (Ct. App. 2003); *State v. McFarland*, 130 Idaho 358, 362, 941 P.2d 330, 334 (Ct. App. 1997). Here, although Maxim made her motion to withdraw at her sentencing hearing, the record indicates that Maxim was aware of the potential sentence she was facing. Thus, because Maxim was privy to information concerning what sentence she would receive, this Court will apply the more stringent standard in the case presented here.

Maxim contends the district court abused its discretion by denying her motion to withdraw her guilty plea. She specifically asserts that she was coerced by the Department of Health and Welfare into entering this plea. At the plea colloquy, the district court asked a series of questions to ensure Maxim was knowingly, voluntarily, and intelligently entering the guilty plea. Maxim admitted under oath that she was able to make decisions in her best interest, that it was her decision to accept the plea, and no other outside influences caused her to take the agreement. The district court ensured that Maxim knew of the consequences of her *Alford* plea before she entered it. Although the district court observed that Maxim was "a little emotional" at the plea hearing, the influence of an emotional condition is not a just reason to withdraw a valid, voluntary guilty plea. *State v. Hawkins*, 117 Idaho 285, 288-89, 787 P.2d 271, 274-75 (1990). The Idaho Supreme Court has affirmed the denial of a motion to withdraw a guilty plea even though a defendant is under extreme emotional stress prior to the plea entry. *State v. Dopp*, 124 Idaho 481, 861 P.2d 51 (1993).

4

Further, serious family pressures coupled with emotional stress do not render a guilty plea invalid. *State v. Nath*, 141 Idaho 584, 586, 114 P.3d 142, 144 (Ct. App. 2005). Here, Maxim contends that the Department of Health and Welfare told her she had to plead guilty and attend mental health court in order to regain custody of her minor children. However, the prosecutor stated at the change of plea hearing that the state was unaware of the conversations between Maxim and the Department of Health and Welfare although it had been informed that there was a child protection case against Maxim based on the criminal charges against her. Further, the state noted that the recommendation that Maxim attend mental health court was made four months prior to the change of plea hearing. After hearing the prosecution's statements, Maxim admitted she was not pressured into accepting the plea agreement and she was satisfied with the agreement with the exception that she may not be able to pay the fines associated with it. Therefore, Maxim took into account her family pressure to regain custody of her children at the time she entered the guilty plea. Thus, Maxim has not presented a valid reason to withdraw her guilty plea.

We conclude the district court did not abuse its discretion in denying Maxim's motion to withdraw her *Alford* guilty plea. Accordingly, we affirm Maxim's judgment of conviction for possession of a controlled substance.

Judge GUTIERREZ and Judge MELANSON **CONCUR.**