**IN THE COURT OF APPEALS OF THE STATE OF IDAHO**

**Docket No. 47875**

| | |
|---|---|
| STATE OF IDAHO, | ) |
| | ) **Filed: January 7, 2022** |
| Plaintiff-Respondent, | ) |
| | ) **Melanie Gagnepain, Clerk** |
| v. | ) |
| | ) **THIS IS AN UNPUBLISHED** |
| IAN AHMAD SHADMAN, | ) **OPINION AND SHALL NOT** |
| | ) **BE CITED AS AUTHORITY** |
| Defendant-Appellant. | ) |
| | ) |

Appeal from the District Court of the First Judicial District, State of Idaho, Kootenai County. Hon. Lansing L. Haynes, District Judge.

Judgment of conviction for battery with the intent to commit a serious felony, <u>affirmed</u>.

Eric D. Fredericksen, State Appellate Public Defender; Jason C. Pintler, Deputy Appellate Public Defender, Boise, for appellant.

Hon. Lawrence G. Wasden, Attorney General; Kenneth K. Jorgensen, Deputy Attorney General, Boise, for respondent.

_____

BRAILSFORD, Judge

Ian Ahmad Shadman appeals his conviction for battery with the intent to commit a serious felony, rape, Idaho Code §§ 18-903, 18-911. On appeal, he challenges the sufficiency of the evidence to prove a specific intent to commit rape. We affirm.

**I.**

**FACTUAL AND PROCEDURAL BACKGROUND**

A jury convicted Shadman of battery with the intent to commit rape. At trial, the victim, I.B., testified that she met Shadman through mutual friends at church in the fall of 2018. According to I.B.'s testimony, Shadman was very involved in the church, appeared to be "part of the staff," was on the "prayer team," and was "working towards" being "part of [the] leadership." Although I.B. was initially reluctant to have a relationship with Shadman because she was

1

recently divorced, she and Shadman entered into a romantic relationship. Shadman told I.B. "[they] were meant to be together and that God told [Shadman] that he was going to marry [her]," and they contemplated getting married in February 2020. During their relationship, Shadman and I.B. consensually kissed and communicated "constantly" on a daily basis via various electronic messaging applications. During some of these communications, I.B. sent provocative messages and photographs of herself, including a topless photograph. Although I.B. and Shadman spoke about having sex, they did not have sex because, according to I.B., "the church had a huge influence on [her]" and "sex wasn't something you were to ever do unless you were married."

On January 19 and 20, 2019, I.B. and Shadman attended a church conference together at which "four prophets" prophesied "over the people in the church." During the conference, I.B. became uncomfortable and uneasy with the church; "didn't want to be in the church" any longer; and told Shadman she "didn't want to see him" or to talk to him anymore, which "upset" him. Regardless, I.B. and Shadman continued to exchange messages after the conference, and Shadman asked to come to I.B.'s apartment on the evening of January 20. I.B. told Shadman he could come to her apartment, which Shadman did around 10:00 that night.

I.B. testified that when Shadman arrived, she was in her bed under the covers wearing a t-shirt and shorts in which she slept and that Shadman sat on her bed; they talked for "a few hours"; and then I.B. fell asleep. She awoke in the middle of the night to find Shadman asleep next to her with "no clothes on except for his boxers" and "spooning" her. At that time, I.B. "shoved him off" and asked him to leave, but he responded he would leave in the morning.

In the morning, I.B. awoke to find Shadman still laying in her bed. She asked him several times to leave but he did not. Eventually, I.B. stood in the hallway outside her bedroom, told Shadman to dress, and "ushered at the door" to get him to leave. Shadman got up as if he was going to leave, but he kept walking towards I.B., who retreated into her living room. Shadman followed her, picked her up, put her over his shoulder, carried her back to her bedroom, threw her on the bed, got on top of her, and tried to take her clothes off. I.B. testified that Shadman used one hand to restrain her, stuck his hand up her shirt, and attempted to pull down her shorts.

During this conduct, Shadman bit I.B. on the neck and touched her breasts and vagina under her clothing. I.B. testified that, although Shadman "stuck his hand down there" on her

2

vagina, he did not penetrate her vagina but came "pretty close." Also, during this conduct, Shadman "started saying it was [I.B.'s] fault that he had to do what he was going to do." I.B. yelled at Shadman to stop numerous times and "was kicking [Shadman] and trying [her] hardest to push him off." Eventually, Shadman got up, dressed, and left I.B.'s apartment. I.B. testified Shadman's conduct caused bite marks on her neck and bruising on her wrists and vagina, but she neither sought medical attention nor took photographs of these injuries.

Despite this incident, I.B. and Shadman continued to have "pretty normal" contact on January 21, and I.B. "thought what happened was not a big deal." In the following days, however, I.B. spoke to other people about the incident and concluded Shadman's conduct "wasn't okay." The Sunday following the incident, I.B. spoke to the pastor's wife and, based on this conversation, reported Shadman's conduct to the police the next day.

As a result of the incident on the morning of January 21, the State charged Shadman with sexual crimes; Shadman pled not guilty; and the case proceeded to trial on the charge of battery with the intent to commit rape. At trial, in addition to I.B.'s testimony, the detectives, who interviewed various witnesses, including Shadman and I.B., and who extracted messages from Shadman and I.B.'s cellphones, testified. The State also admitted into evidence numerous messages including photographs between I.B. and Shadman and a video recording of a police interview with Shadman.

Following the State's case-in-chief, Shadman moved for a judgment of acquittal under Idaho Criminal Rule 29, arguing the State failed to show Shadman had the specific intent to rape I.B. The district court denied the motion, finding the jury could reasonably infer Shadman had the specific intent to rape I.B. The court instructed the jury that to find Shadman guilty of battery with intent to commit rape, the State was required to prove, among other elements, that "when committing such battery [Shadman] had the intent to use such force as was necessary to cause his penis to penetrate, however slightly, [I.B.'s] vaginal, oral, or anal opening, without her consent."[1] The jury found Shadman guilty of battery with the intent to commit rape.

Shadman timely appeals.

---

[1]     Shadman notes this instruction is consistent with the Idaho Supreme Court's standard jury instruction for battery with intent to commit rape, I.C.J.I. 970, but asserts the instruction is otherwise "inconsistent with Idaho law." Shadman, however, acknowledges he requested that the district court give the jury this instruction, invited any error, and thus, may not challenge the instruction on appeal.

## II.

## STANDARD OF REVIEW

Appellate review of the sufficiency of the evidence is limited in scope. A finding of guilt will not be overturned on appeal where there is substantial evidence upon which a reasonable trier of fact could have found that the prosecution sustained its burden of proving the essential elements of a crime beyond a reasonable doubt. *State v. Herrera-Brito*, 131 Idaho 383, 385, 957 P.2d 1099, 1101 (Ct. App. 1998); *State v. Knutson*, 121 Idaho 101, 104, 822 P.2d 998, 1001 (Ct. App. 1991). We will not substitute our view for that of the trier of fact as to the credibility of the witnesses, the weight to be given to the testimony, and the reasonable inferences to be drawn from the evidence. *Knutson*, 121 Idaho at 104, 822 P.2d at 1001; *State v. Decker*, 108 Idaho 683, 684, 701 P.2d 303, 304 (Ct. App. 1985). Moreover, we will consider the evidence in the light most favorable to the prosecution. *Herrera-Brito*, 131 Idaho at 385, 957 P.2d at 1101; *Knutson*, 121 Idaho at 104, 822 P.2d at 1001.

## III.

## ANALYSIS

Shadman challenges the sufficiency of evidence to prove a specific intent to commit rape. Battery with the intent to commit rape is a specific intent crime. *State v. Mayer*, 139 Idaho 643, 646-47, 84 P.3d 579, 582-83 (Ct. App. 2004). The Idaho Supreme Court has recognized "a specific intent requirement refers to that state of mind which in part defines the crime and is an element thereof." *State v. Gowin*, 97 Idaho 766, 768, 554 P.2d 944, 946 (1976). "In other words, specific intent requires not only the doing of an act, but the performance of that act with the intent to cause the proscribed result." *State v. Rolon*, 146 Idaho 684, 691, 201 P.3d 657, 664 (Ct. App. 2008). Thus, as Shadman acknowledges, the State was required to prove that Shadman committed battery with the specific intent to use force or violence to overcome I.B.'s resistance to penetrate I.B.'s oral, anal, or vaginal opening with his penis. *See* I.C. § 18-903 (defining battery), I.C. § 18-911 (including rape as a serious felony), I.C. § 18-6101(4) (defining rape).[2]

On appeal, Shadman concedes the State presented sufficient evidence to prove he committed a sexual battery. He argues, however, that "there was simply no evidence that he

---

[2] Idaho Code § 18-6101 provides numerous definitions of rape, but the parties agree that subsection (4), which provides rape occurs "[w]here the victim resists but the resistance is overcome by force or violence," is the applicable definition of rape in this case.

intended to use force or violence sufficient to overcome [I.B.'s] resistance, and to insert his penis into her mouth, anus, or vagina." In support, Shadman notes that he did not "expose" his penis; I.B. "initially 'thought what happened was not a big deal'"; Shadman's conduct did not show intent but rather "he was struggling with whether he wanted to have pre-marital sex with [I.B.]"; and I.B.'s "sexually suggestive" messages support this latter interpretation of Shadman's conduct as "struggling with the boundaries they had placed on their own sexuality." In response, the State asserts it presented sufficient evidence to support the jury's verdict.

We agree with the State. The evidence shows that Shadman refused to leave I.B.'s apartment despite her repeated requests. He forcibly put her on her bed, restrained her, attempted to remove her clothing, bit her, and groped her breasts and vaginal area under her clothing. This conduct caused bite marks on I.B.'s neck and bruising on her wrists and vaginal area. I.B. resisted Shadman's conduct by yelling for him to stop, kicking him, and attempting to push him away. During this conduct, Shadman stated that "it was [I.B.'s] fault that he had to do what he was going to do." Afterwards, Shadman sent I.B. several messages suggesting he had intended to rape I.B. These messages included Shadman's statements, among others, that "I could have raped you"; he was "uncontrollably horny sometimes" making it hard for him "to fight this lustful spirit"; "the spirit of sexual dominance was within [him]"; and he "lost control" because of the "sexual tension" involved. Based on this substantial evidence, we conclude a reasonable jury could have found the State proved Shadman had the intent to commit rape by overcoming I.B.'s resistance with force to penetrate her oral, anal, or vaginal opening with his penis. *See, e.g.*, *State v. Diaz*, 158 Idaho 629, 636, 349 P.3d 1220, 1227 (Ct. App. 2015) (observing defendant's conduct, including tackling and straddling victim, touching victim's genitals, and manipulating his own waistband area was "potent evidence" of specific intent); *State v. Monroe*, 128 Idaho 676, 678-79, 917 P.2d 1316, 1318-19 (Ct. App. 1996) (ruling that isolating victim, blocking victim's exit, and directing victim to cleared-off bed was sufficient for jury to reasonably find defendant had specific intent to commit rape or lewd conduct with minor).

On reply, Shadman argues the State does not contest that "there was insufficient evidence to support a finding that, *at the time* [Shadman] committed the battery upon [I.B.], he had the specific intent to cause penile penetration by overcoming her resistance through the use of force or violence." (Emphasis added.) To the extent Shadman is arguing the jury could not infer his

5

specific intent at the time of his conduct based on his post-conduct admissions about the nature of that conduct, we disagree. Shadman's post-conduct admissions are circumstantial evidence of his specific intent to rape I.B. "A jury may infer intent from the defendant's conduct or from circumstantial evidence." *See State v. Moad*, 156 Idaho 654, 661, 330 P.3d 400, 407 (Ct. App. 2014) (citations omitted) (ruling jury could reasonably infer specific intent to commit rape); *see also* I.C. § 18-115 ("Intent or intention is manifested by the commission of the acts and surrounding circumstances connected with the offense."). Moreover, Shadman fails to cite any authority for the proposition that a defendant's communications made after a battery are not evidence of the defendant's intent at the time of the battery. *See State v. Zichko*, 129 Idaho 259, 263, 923 P.2d 966, 970 (1996) (ruling party waives issue on appeal if either authority or argument is lacking).

Shadman also argues on reply that "the State's claim that evidence of [I.B.'s] lack of consent is sufficient to support [Shadman's] conviction is without merit." We do not construe the State's argument, however, as only asserting that I.B.'s lack of consent established Shadman's intent to rape her. Rather, the State points to additional evidence of Shadman's specific intent, including his refusal to leave, his forcible restraint of I.B., I.B.'s resistance to this restraint, his conduct during her restraint, and his post-conduct statements. When viewed in the light most favorable to the prosecution, the State presented substantial evidence for a reasonable jury to infer Shadman intended to rape I.B.

## IV.
## CONCLUSION

Substantial evidence supports Shadman's conviction of battery with the intent to commit rape. Accordingly, we affirm Shadman's conviction.

Judge GRATTON and Judge HUSKEY **CONCUR**.

6